1  Robert L. Starr, Bar No. 183052
   robert@starrlaw.com
2  THE LAW OFFICE OF ROBERT L. STARR, APC
   23901 Calabasas Road, #2072
3  Calabasas, California 91302
   Telephone: (818) 225-9040
4  Facsimile: (818) 225-9042

5  Stephen M. Harris, Bar No. 110626
   stephen@smh-legal.com
6  THE LAW OFFICE OF STEPHEN M. HARRIS, APC
   6320 Canoga Avenue, Suite 1500
7  Woodland Hills, California 91367
   Telephone: (818) 924-3103
8  Facsimile: (818) 924-3079

9  Attorneys for Plaintiff
   Kieva Myers, individually, and on behalf of a class
10 of similarly situated individuals

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

14 KIEVA MYERS, individually, and on      ) NO.
   behalf of a class of similarly situated  ) CLASS ACTION
15 individuals,                            )
                                           ) COMPLAINT FOR
16          Plaintiff,                      )
                                           ) 1. Violations of Business and
17     v.                                  ) Professions Code 17200
                                           ) 2. Fraud
18 BMW OF NORTH AMERICA, LLC,              ) 3. Breach of Implied Warranty
   BAYERISCHE MOTOREN WERKE              ) 4. Violation of Consumer Legal
19 AKTIENGESELLSCHAFT,                    ) Remedies Act
                                           )
20          Defendants.                     )
                                           )
21                                         )
                                           )
22                                         )
                                           )
23 _____ )

24

25

26

27

28

## **INTRODUCTION**

1.      Kieva Myers ("Myers") brings this action for herself and on behalf all persons in California ("Class Members") who purchased or leased model year 2008 through 2015 BMW X5 vehicles equipped with the comfort access feature ("Class Vehicles") which were manufactured, distributed, and sold by BMW OF NORTH AMERICA, LLC, a New Jersey limited liability company (BMW NA) and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation organized under the law of the federal republic of Germany (BMW AG). BMW NA and BMW AG are sometimes referred to collectively as Defendants.

## **PARTIES**

**KIEVA MYERS**

2.      Myers resides in California. Myers is the owner of a 2013 BMW X5 equipped with the comfort access feature ("Kieva Vehicle"). Kieva purchased the Kieva Vehicle in San Francisco, California. The Kieva Vehicle was purchased primarily for personal, family and household non-commercial purposes. The Kieva Vehicle was manufactured, sold, distributed, advertised, marketed and warranted by Defendants, and bears the Vehicle Identification Number 5UXZW0C50D0B95201.

**Defendants**

3.      BMW OF NORTH AMERICA, LLC (BMW NA) is a limited liability company, organized and in existence under the laws of the State of New Jersey and registered with the Secretary of State to conduct business in California. BMW NA is and at all times herein relevant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

4.     BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation organized under the law of the federal republic of Germany (BMW AG) is a corporation organized under the laws of the federal republic of Germany. BMW AG is and at all times herein relevant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components for sale throughout the United States of America.

## JURISDICTION

5.     This is a class action that is subject to the Class Action Fairness Act, and diversity jurisdiction under 28 USC § 1332 since plaintiff is a citizen of California, BMW NA is incorporated in New Jersey, and BMW AG is incorporated in Germany and the amount in controversy exceeds $5,000,000.

6.     Kieva resides at 363 10th Avenue, San Francisco, California 94118.

7.     Kieva purchased the Kieva Vehicle in San Francisco, California.

8.     Due to the Kieva Vehicle being purchased in San Francisco, California, and due to Kieva residing in San Francisco, California, jurisdiction is proper in the Northern District.

## INTRADISCTRICT ASSIGNMENT

9.     A substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action occurred in San Francisco County pursuant to Local Rule 3-5(b).

## APPLICABLE LAW

10.     California State law applies to all claims in this action.

1

**FACTUAL ALLEGATIONS**

2    11.    The Class Vehicles consist of all model year 2008 through 2015 BMW

3  X5 vehicles equipped with the comfort access feature, sold or leased to consumers

4  in California.

5    12.    The comfort access feature is a convenience feature integrated into the

6  Class Vehicles, and their remote controls. With regard to the functionality of the

7  comfort access feature, the BMW NA owners' manual states, "The concept: The

8  vehicle can be accessed without activating the remote control. All you need to do is

9  to have the remote control with you, e.g., in your jacket pocket. The vehicle

10  automatically detects the remote control when it is nearby or in the passenger

11  compartment. Comfort access supports the following functions: Unlocking/locking

12  of the vehicle." The owners' manual goes on to say, "Functional requirement: To

13  lock the vehicle, the remote control must be located outside of the vehicle." The

14  owners' manual clearly instructs operators of Class Vehicles that in order to lock

15  the vehicle, the remote control must be located outside of the vehicle, and thus, if

16  the remote control is located inside of the vehicle, the vehicle cannot lock.

17    13.    Unfortunately, the comfort access feature is defective. The defect is

18  that sometimes while the remote control is located inside a Class Vehicle, the Class

19  Vehicle spontaneously locks (Comfort Access Defect). Numerous owners and

20  lessees of 2008 through 2015 BMW X5 vehicles, including but not limited to

21  Kieva, have reported that their vehicles have automatically locked while the remote

22  control has been inside of their vehicles, at times trapping children inside their

23  vehicles. Examples of consumer complaints submitted to the National Highway

24  Traffic Safety Administration are as follows:

25

26

27

28

-Date Complaint filed 7/8/2011, NHTSA ID Number 10411500
2009 BMW X5
MY DAUGHTER WAS PUT IN THE BACKSEAT IN A HOT (100F) CAR
AND STRAPPED IN. MY WIFE PLACED HER PURSE (KEYS IN IT) ON
THE MIDDLE CONSOLE. THE DOOR WAS SHUT AND LOCKED ON
ITS OWN, LOCKING MY CHILD IN THE CAR. WE CALLED BMW
ASSIST TO REMOTELY UNLOCK THE CAR. THIS DID NOT WORK.
POLICE AND FIRE WAS CALLED AND SHOWED UP ON SEEN. A
NEIGHBOR FIREMAN CAME AND BROKE THE WINDOW. THE CAR
STILL WOULD NOT UNLOCK AND MY WIFE CRAWLED THROUGH
THE BROKEN WINDOW CUTTING HER LEG TO GET MY NOW HOT,
RED AND LETHARGIC CHILD OUT OF THE CAR. AFTERWARD, THE
CAR STILL WOULD NOT UNLOCK FOR 2 HOURS.

-Date complaint filed 6/21/2010, NHTSA ID Number 10339251
2009 BMW X5
MY WIFE HAD A HARROWING EXPERIENCE WITH THE 09 BMW-X5
LOCKING ITSELF WITH THE KEY IN THE CAR. REMOTE KEY WAS
INSIDE THE CAR IN HER PURSE ON THE PASSENGER SEAT-
UNTOUCHED BY ANYONE. CAR WAS PARKED WITH ENGINE OFF.
CAR LOCKED ITSELF AFTER OUR TWO KIDS WERE SECURED IN
THE BACKSEATS AND THEIR DOORS SHUT WITH MY WIFE
OUTSIDE! IT WAS OVER 90 DEGREES OUTSIDE AND SHE DID NOT
HAVE MUCH TIME TO CALL FOR HELP. MY 5 YEAR OLD'S
ATTEMPTS TO OPEN THE DOOR RESULTED IN ALARM GOING OFF
AND EVERYTHING SHUT DOWN. FINALLY, BY LUCK, SHE WAS
ABLE TO GUIDE THE 5 YEAR OLD TO GET TO THE FRONT SEAT
AND LOCATE THE KEY FROM THE PURSE AND UNLOCK THE CAR.
IF IT WAS ONLY THE 2 YEAR OLD INSIDE, SHE HAD NO OPTION
BUT TO BREAK THE WINDOW! THIS IS A REALLY SCARY
SITUATION FOR A LUXURY CAR AND A BRAND NEW ONE. IT HAD
NEVER HAPPENED TO US. SURELY WE DO NOT WANT TO
EXPERIENCE THIS AGAIN AND WISH IT ON NO ONE ELSE! WE
SUSPECT THAT IT HAD TO BE SOMETHING TO DO WITH THE
ELECTRONICS. IT HAS NOT OCCURRED AGAIN IN THE LAST 3
DAYS. THE REMOTE KEY IN THESE CARS ARE DESIGNED IN SUCH
A WAY THAT THE CAR SHOULD NOT BE ABLE TO LOCK ITSELF
WITH THE KEY INSIDE THE CAR AND THE DRIVER OUT!

-Date complaint filed 12/3/2014, NHTSA ID Number 10662059
2013 BMW X5
ON 3 SEPARATE OCCASIONS THE ELECTRIC DOOR LOCKS HAVE
LOCKED THE CAR WITH THE KEY FOB INSIDE THE CAR. ON THE
1ST OCCASION , A 2 Y/O CHILD HAD JUST BEEN STRAPPED INTO
HIS CAR SEAT , A PURSE WITH THE KEY INSIDE THE PURSE , WAS
PLACED ON THE FLOOR BEHIND THE DRIVER'S SEAT , THE REAR
DOOR WAS CLOSED & ALL LOCKS WERE ACTIVATED . THIS
OCCURRED IN THE HEAT OF SUMMER & REQUIRED ANOTHER
DRIVER WITH A SPARE FOB TO QUICKLY DRIVE TO THE SITE OF
THE PARKED CAR & AVOID HAVING TO BREAK A WINDOW . THIS
WAS A VERY SCARY MOMENT ! SAME THING HAPPENED ( NO
CHILD IN CAR ) ; ALL DOORS LOCKED WHEN A BRIEFCASE
CONTAINING BOTH KEY FOBS WAS PLACED ON BACK SEAT &
REAR DOOR WAS CLOSED . A CALL TO BMW HOT LINE RESULTED
IN THE DOORS BEING UNLOCKED VIA THE AIRWAYS .THE SAME
INCIDENT OCCURED THIS WEEK WITH ONLY ONE KEY FOB IN
THE CAR . THE VEHICLE WAS CHECKED BY THE LOCAL DEALER
& NO PROBLEMS WERE FOUND . IT SEEMS THERE IS A POTENTIAL
PROBLEM & I WISH TO DOCUMENT SUCH FACT SO AS TO
HOPEFULLY PREVENT UNEXPECTED DOOR LOCK ACTIVATION
WITH SMALL CHILDREN IN THE CAR.

14.     Complaint ID Number 1041150 clearly indicates that on or before July 8, 2011, a consumer called BMW NA, and advised BMW NA of a Class Vehicle spontaneously locking, while the Class Vehicle's remote was located inside the Class Vehicle.

15.     On October 19, 2015, Kieva experienced the Comfort Access Defect. Kieva opened the rear door of the Kieva Vehicle, placed Kieva's child inside the Kieva Vehicle, placed the remove inside the Kieva Vehicle, and shut rear door of the Kieva Vehicle. Next, Kieva walked around to the driver's door, and attempted to open the driver's door. Prior to Kieva getting to the driver's door, the Kieva Vehicle locked, locking Kieva out of the Kieva Vehicle, and locking her very young child inside the Kieva Vehicle. Kieva's child was too young to know how to open the door to the Kieva Vehicle, and was trapped inside the Kieva Vehicle.

16.     To summarize, the Kieva Vehicle locked even though the Kieva Vehicle's remote was located inside the Kieva Vehicle. This resulted in Kieva's child being locked inside the Kieva Vehicle. In order to rescue Kieva's child, it was necessary to break one of the Kieva Vehicle's windows, doing damage to the Kieva Vehicle, and terrifying Kieva's child.

17.     From 1998 to 2015, every year at least 24 children have died from heatstroke as the result of being locked inside vehicles. A child being locked inside of a vehicle creates a very serious threat to human life. Class Vehicles locking by themselves is extremely unsafe. The Class Vehicles' owners' manual states that a Class Vehicle cannot be locked if the Class Vehicle's remote is located inside the Class Vehicle. Shockingly, Class Vehicles have locked while their remotes, as well as children, have been located inside the Class Vehicles, placing these children at risk of being killed.

18.     Following Kieva's harrowing occurrence of October 19, 2015, a complaint was made by Kieva's family to BMW NA regarding the October 19, 2015 occurrence. In response to this complaint, on November 4, 2015, Jay Hanson of BMW NA wrote an email to the Kieva family. An excerpt of Mr. Hanson's email reads as follows, "Therefore, we must be dealing either with a malfunction of the locking system or an inadvertent activation of the locking system via either the remote transmitter or the Comfort Access System. Again, it is not impossible to lock a key in the vehicle – and to do so is not necessarily indicative of a malfunction. For example, if a door other than the driver's door is open and the locking button on the transmitter is pressed, the vehicle will lock when the open door is closed. If the user is unaware of having pressed the locking button, then it would certainly appear that it had somehow locked itself." Mr. Hanson's email completely contradicts the BMW NA owner's manual, which states, "To lock the vehicle, the remote control must be located outside of the vehicle."

19.     BMW NA widely advertises, publishes, publicizes, and disseminates to the public that the Class Vehicles are extremely safe vehicles, and are in fact, "The Ultimate Driving Machine." Furthermore, BMW NA's owners manual written for the Class Vehicles clearly advises consumers that, "To lock the vehicle, the remote must be outside the vehicle." Contrary to these representations, the Class Vehicles are not safe, and have a defect which has resulted in children being locked inside Class Vehicles. Furthermore, contrary to the representations in the owner's manual relating to the Class Vehicles, BMW has actually confirmed that it is possible to lock a Class Vehicle with the remote being located inside the Class Vehicle.

20.     One complaint submitted to the National Highway Traffic Safety Administration indicates that on or before July 8, 2011, a consumer specifically advised BMW NA that a 2009 BMW X5 spontaneously locked while the the 2009 BMW X5's remote was located inside the vehicle. BMW NA and BMW AG share information regarding consumer complaints. As such, BMW NA and BMW AG have known about this complaint dating back to July 8, 2011, and probably even before that date. Notwithstanding, BMW NA and BMW AG have refused to make repairs in order to resolve the Comfort Access Defect, have refused to advise consumers of the Comfort Access Defect, have refused to modify Class Vehicle owner's manuals so that they are accurate, and have refused to pay for damage suffered to consumers as a result of the Comfort Access Defect.

21.     Furthermore, Mr. Hanson's email of November 4, 2015 acknowledges that a Class Vehicle can be locked while the Class Vehicle's remote is inside the Class Vehicle, and confirms BMW's knowledge that the Class Vehicle's owner's manual is false and misleading.

22.     BMW NA has been advised of the damages sustained as a result of the Kieva Vehicle experiencing the Comfort Access Defect, however BMW has failed to unconditionally reimburse Kieva for all of the damages that have resulted from the Comfort Access Defect.

23.     As a result of BMW NA's misconduct, Kieva and the other owners and lessees of Class Vehicles have been harmed and have suffered actual damages. The actual damages include but are not limited to the fact that Class Vehicles continue to experience the Comfort Access Defect, that Class Members have suffered unreimbursed out of pocket expenses as a result of the Comfort Access Defect, and that the Class Vehicles continue to have inaccurate owner's manuals.

24.     BMW NA and BMW AG knew or should have known that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, BMW NA and BMW AG actively concealed and failed to disclose this defect to Kieva and the Class Members at the time of purchase or lease and thereafter.

25.     BMW NA and BMW AG have failed to notify Class Members of the Comfort Access Defect, placing consumers at risk of suffering injury and financial loss.

26.     It is Kieva's information and belief that the Comfort Access Defect is a pervasive defect affecting every single Class Vehicle, and posing a serious safety hazard for the general public.

27.     BMW NA and BMW AG have superior and exclusive knowledge of the Comfort Access Defect. BMW NA and BMW AG knew that the defect was not known or reasonably discoverable by Kieva and Class Members prior to their purchase or lease of the Class Vehicles.

28.     Only BMW NA and BMW AG had access to information about the significant risks associated with the Comfort Access Defect, through BMW NA's dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

29.     While BMW NA and BMW AG have been fully aware of the Comfort Access Defect in the Class Vehicles, BMW NA and BMW AG have actively concealed the existence and nature of the Comfort Access Defect from Kieva and Class Members at the time purchase or sale and thereafter. Specifically, BMW NA and BMW AG have:

a.     failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including the Comfort Access Defect;

b.     failed to disclose at the time of purchase or lease that the Class Vehicles were not in good in working order, were defective, and were not fit for their intended purposes; and

c.     not properly instructed BMW NA authorized repair facilities regarding the true nature of the Comfort Access Defect. BMW NA has instead made false statements that that there is nothing wrong with the Class Vehicles, and that Class Vehicles cannot be locked if the Class Vehicles' remotes are inside the Class Vehicles. Consequently, this misinformation provided by BMW NA has resulted in complaining consumers being told that there is nothing wrong with their Class Vehicles.

30.     Kieva and Class Members have expended money to make repairs as a result of the Comfort Access Defect, despite BMW NA and BMS AG's knowledge of the defect.

31.   The Members of the Class have not received the value for which they bargained when they purchased or leased the Class Vehicles.

32.   As a result of the defects, the value of the Class Vehicles has diminished, including without limitation re-sale value.

## TOLLING OF THE STATUTE OF LIMITATIONS

33.   Since the defects in the design or manufacture of the Class Vehicles cannot be detected until the defect manifests itself, Kieva and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

34.   Kieva and the Class Members had no realistic ability to discern that the Class Vehicles were defective until after Kieva and the Class Members experienced the Comfort Access Defect. In addition, despite their due diligence, Kieva and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles had been concealed from them until manifestation of the Comfort Access Defect. Therefore, the discovery rule is applicable to the claims asserted by Kieva and the Class Members.

35.   BMW NA and BMW AG have known of the defect in the Class Vehicles, and have concealed from or failed to alert owners and lessees of the Class Vehicles of the full and complete nature of the Comfort Access Defect.

36.   Any applicable statute of limitation was tolled by BMW NA and BMW AG's knowledge, active concealment, and denial of the facts alleged herein.  BMW NA and BMW AG are further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles.

1

## CLASS ACTION ALLEGATIONS

2       37.     Kieva brings this lawsuit as a class action on behalf of herself and all

3   other Class Members similarly situated pursuant to Federal Rule of Civil Procedure

4   23.  This action satisfies the numerosity, commonality, typicality, adequacy,

5   predominance, and superiority requirements of those provisions.

6       38.     The Class and Sub-Class are defined as:

7               Class: All Persons in the State of California who purchased

8               or leased a Class Vehicle.

9               Sub-Class:   All Class Members who are "consumers" within

10              the meaning of California Civil Code § 1761(d). Excluded

11              from the Class and Sub-Classes are: (1) Defendants, any

12              entity or division in which Defendants has a controlling

13              interest, and its legal representatives, officers, directors,

14              assigns, and successors; (2) the Judge to whom this case is

15              assigned and the Judge's staff; and (3) those persons who

16              have suffered personal injuries as a result of the facts alleged

17              herein. Kieva reserves the right to amend the Class and Sub-

18              Classes definitions if discovery and further investigation

19              reveal that the Class and Sub-Classes should be expanded or

20              otherwise modified.

21      39.     Numerosity: Although the exact number of Class Members is uncertain

22   and can only be ascertained through appropriate discovery, the number is great

23   enough such that joinder is impracticable. The disposition of the claims of these

24   Class Members in a single action will provide substantial benefits to all parties and

25   to the Court. The Class Members are readily identifiable from information and

26   records in Defendants' possession, custody, or control, as well as from records kept

27   by the Department of Motor Vehicles.

28

40.     <u>Typicality</u>: The claims of the representative Kieva are typical of the claims of the Class in that the representative Kieva, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by BMW NA and BMW AG.  The representative Kieva, like all Class Members, has been damaged by Defendants' misconduct in that she has incurred or will incur the cost of repairs relating to the Comfort Access Defect.  Furthermore, the factual bases of BMW NA and BMW AG's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

41.     <u>Commonality</u>: There are numerous questions of law and fact common to Kieva and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a.     whether the Class Vehicles suffer from the Comfort Access Defect;

b.     whether the Comfort Access Defect constitutes an unreasonable safety risk;

c.     whether Defendants know about the Comfort Access Defect and, if so, how long Defendants have known of the defect;

d.     whether the defective nature of the Class Vehicles constitutes a material fact;

e.     whether Defendants have a duty to disclose the defective nature of the Class Vehicles to Kieva and Class Members;

f.     whether Kieva and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

g.      Whether Defendants knew or reasonably should have known of the Comfort Access Defect in the Class Vehicles before the Class Vehicles were sold or leased them to Class Members;

h.      Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

i.      Whether Defendants breached the express terms of the BMW NA warranty by refusing to pay for repairs relating to the Comfort Access Defect during the term of the warranty;

j.      Whether Defendants concealed and refused to disclose the nature of the Comfort Access Defect from purchasers and lessees of Class Vehicles at the time of sale and otherwise;

k.      Whether Class Members have suffered loss as a result of the Comfort Access Defect, and to what extent BMW NA and BMW AG are obligated to compensate the Class Members for any and all losses.

42.      <u>Adequate Representation</u>:  Kieva will fairly and adequately protect the interests of the Class Members. Kieva has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Kieva intends to prosecute this action vigorously.

43.      <u>Predominance and Superiority</u>: Kieva and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants'

misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

Violation of Business & Professions Code § 17200, et seq.

Against All Defendants

44.     Kieva hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

45.     Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

46.     Kieva and the Class Members are reasonable consumers who do not expect their Class Vehicles to experience the Comfort Access Defect, who expect their owner's manuals to be accurate, and who do not expect their Class Vehicles to spontaneously lock. These are reasonable and objective consumer expectations relating to the Class Vehicles.

47.     Defendants know and have known that the Class Vehicles suffer from an inherent defect, were defectively designed or manufactured, would experience the Comfort Access Defect, and were not suitable for their intended use.

48.     In failing to disclose the Comfort Access Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

49.   Defendants were under a duty to Kieva and the Class Members to disclose the defective nature of the Class Vehicles because:

a.   Defendants were in a superior position to know the true state of facts about the Comfort Access Defect in the Class Vehicles;

b.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and,

c.   Defendants actively concealed the defective nature of the Class Vehicles from Kieva and the Class Members.

50.   The facts concealed and not disclosed by Defendants to Kieva and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles. Had Kieva and other Class Members known that the Class Vehicles had the Comfort Access Defect, Kieva and the Class Members would not have purchased Class Vehicles.

51.   Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the Comfort Access Defect. Defendants did not disclose to consumers that the Comfort Access Defect exists, did not reimburse consumers for costs incurred in connection with the Comfort Access Defect, and did not correct mistakes in Class Vehicles' owner's manuals.

52.   Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

53.   The unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

54.   As a direct and proximate result of Defendants' unfair and deceptive practices, Kieva and the Class have suffered and will continue to suffer damages.

55.    Defendants were unjustly enriched and should be required to make restitution to Kieva and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## SECOND CAUSE OF ACTION

Fraud by Omission

Against All Defendants

56.    Kieva hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

57.    It is Kieva's information and belief that BMW NA and BMW AG knew or should have known that the Comfort Access Defect in the Class Vehicles was a condition rendering the Class Vehicles defectively designed or manufactured, causing the Class Vehicles to be unsafe, and rendering the Class Vehicles not suitable for their intended use.

58.    Defendants concealed from and failed to disclose to Kieva and the Class the defective nature of the Class Vehicles.

59.    Defendants concealed from and failed to disclose to Kieva and the Class the inaccuracies in the Class Vehicles' owner's manuals.

60.    Defendants were under a duty to Kieva and the Class to disclose the defective nature of the Comfort Access Defect because:

        a.      Defendants were in a superior position to know the true state of facts about the Comfort Access Defect in the Class Vehicles;

        b.      Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles;

        c.      Defendants actively concealed the defective nature of the Class Vehicles from Kieva and the Class;

d.     The Comfort Access Defect posed a serious safety hazard for Class Members, as well as the general public.

61.     The facts concealed or not disclosed by Defendants to Kieva and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles.  Had Kieva and other Class Members known that the Class Vehicles had the Comfort Access Defect, Kieva and the Class Members would not have purchased and leased Class Vehicles, or would have paid less for them.

62.     Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

63.     Defendants concealed or failed to disclose the true nature of the design or manufacturing defect consisting of the Comfort Access Defect existing in its Class Vehicles, in order to induce Kieva and the Class to act thereon. Kieva and the Class Members justifiably relied on the omission to their detriment. This detriment is evident from Kieva's and Class Members' purchase or lease of Defendants' Class Vehicles.

64.     Defendants continued to conceal the defective nature of the Class Vehicles even after Members of the Class began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today, including denying reimbursement of repair costs related to repairs that have been necessary due to the Comfort Access Defect.

65.     As a direct and proximate result of Defendants' misconduct, Kieva and the Class Members have suffered and will continue to suffer actual damages

## **THIRD CAUSE OF ACTION**

Breach of Implied Warranty

Against All Defendants

66.     Kieva hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

67.     BMW NA and BMW AG were the manufacturer, distributor, warrantor, and seller of the Class Vehicles. BMW NA and BMW AG knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

68.     BMW NA and BMW AG provided Kieva and the Class Members with an implied warranty that the Class Vehicles and their components and parts were merchantable and fit for the ordinary purposes for which they were sold. However, the Class vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation, because the Comfort Access Defect results in the Class Vehicles being unsafe.

69.     BMW NA and BMW AG impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included a warranty that the Class Vehicles were safe and fit for their intended use. However, the Class vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation, because the Comfort Access Defect results in the Class Vehicles being unsafe.

70.     As a result of BMW NA's and BMW AG's breach of the applicable implied warranties, owners and lessees of Class Vehicles have suffered ascertainable loss of money, property and value of the Class Vehicles, as well as suffering other damage.

**FOURTH CAUSE OF ACTION**

Violation of Consumer Legal Remedies Act

Against All Defendants

71.     Kieva incorporates by reference the preceding paragraphs of this Complaint.

72.     Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a CLRA violation may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000, 2) an order enjoining the methods, acts, or practices, 3) restitution of property, 4) punitive damages, and 5) any other relief that the court deems proper.

73.     Civil Code section 1781 provides that Kieva may pursue this case as a class action.

74.     Kieva requests injunctive relief pursuant to Civil Code 1782(d).

75.     Kieva is entitled to attorney fees pursuant to Civil Code section 1780(e).

**RELIEF REQUESTED**

76.     Kieva, on behalf of herself, and all others similarly situated, requests the Court to enter judgment against Defendants, as follows:

a.     An order certifying the proposed Class and Sub-Classes, designating Kieva as named representatives of the Class, and designating the Kieva's Counsel as Class Counsel;

b.     A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

c.     An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to

-20-

1  repair the Class Vehicles so that they will no longer possess the Comfort Access

2  Defect;

3          d.      An award to Kieva and the Class of compensatory, exemplary,

4  and statutory damages, including interest, in an amount to be proven at trial;

5          e.      An award to Kieva and the Class of any repair costs they are

6  owed;

7          f.      A declaration that Defendants must disgorge, for the benefit of

8  the Class, all or part of the ill-gotten profits it received from the sale or lease of the

9  Class Vehicles, or make full restitution to Kieva and Class Members;

10         g.      An award of attorneys' fees and costs, as allowed by law;

11         h.      An award of attorneys' fees and costs pursuant to California

12  Code of Civil Procedure § 1021.5;

13         i.      An award of pre-judgment and post-judgment interest;

14         j.      Leave to amend the Complaint to conform to the evidence

15  produced at trial; and

16         k.      Other relief as may be appropriate under the circumstances.

17

18  Date:  January 24, 2016                    The Law Office of Robert L. Starr

19

20                                              By:  /s/ Robert Starr
                                                     Robert Starr
21                                                   Attorney for Plaintiff
                                                     Kieva Myers, individually, and on
22                                                   behalf of a class of similarly situated
                                                     individuals
23

24  DEMAND FOR JURY TRIAL

25  Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

26

27  Date:  January 24, 2016                         /s/ Robert Starr

28