UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIEVA MYERS,

          Plaintiff,

    v.

BMW OF NORTH AMERICA, LLC,

          Defendant.

Case No. 16-cv-00412-WHO

**ORDER GRANTING MOTION TO DISMISS**

Dkt. No. 21

### INTRODUCTION

Plaintiff Kieva Meyers brings a putative class action against BMW of North America, LLC[1] ("BMW") alleging that the comfort access system of certain BMW X5 models is defective because it can cause the vehicles to spontaneously lock when the key remote is inside the vehicle. Meyers asserts that this is contrary to BMW's representations in its owners' manual that "To lock the vehicle, the remote control must be located outside of the vehicle." Based on this alleged defect and representation Meyers alleges four causes of action: (1) violations of California Business and Professions Code § 17200 ("UCL"), (2) Fraud by Omission, (3) Breach of Implied Warranty, and (4) violations of the Consumer Legal Remedies Act ("CLRA"). BMW moves to dismiss Meyers's claims on numerous bases including that Meyers (1) failed to allege her consumer protection and fraud claims with particularity, (2) has not pleaded reliance or actionable misrepresentation, (3) has not adequately alleged fraud by omission because BMW provided adequate warnings, (4) has not adequately alleged fraud by omission because she has not demonstrated that BMW had a duty to disclose, (5) has not alleged privity with BMW on her implied warranty claim, (6) and has not pleaded facts showing that her vehicle was

---

[1] Meyers originally brought individual and class claims against Bayerische Motoren Werke Aktiengesellschaft as well, but voluntarily dismissed these claims on August 5, 2016. Dkt. No. 28

1    unmerchantable.  I heard oral argument on September 21, 2016.  I GRANT BMW's motion to

2    dismiss because Meyers has failed to allege reliance on her CLRA and UCL claims, has failed to

3    allege active concealment on her common law fraud claim, and has failed to allege privity on her

4    implied warranty claim.  Meyers will have 20 days leave to amend her complaint.

5    <div align="center">**BACKGROUND**</div>

6         Meyers purchased a 2013 BMW X5 in San Francisco for personal and family use.  First

7    Amended Complaint ("FAC") ¶ 2.  Her car was equipped with the comfort access system, a

8    convenience feature that works as follows: "The vehicle can be accessed without activating the

9    remote control.  All you need to do is to have the remote control with you, e.g., in your jacket

10    pocket.  The vehicle automatically detects the remote control when it is nearby or in the passenger

11    compartment.  Comfort access supports the following functions: Unlocking/locking of the

12    vehicle."  *Id.* ¶ 12 (quoting the BMW owners' manual).  The owners' manual for her car provides

13    instructions for operating the comfort access system and instructs: "Functional requirement: To

14    lock the vehicle, the remote control must be located outside of the vehicle."  *Id.* Meyers alleges

15    that the comfort access system is defective because "sometimes while the remote control is located

16    inside a Class Vehicle, the Class Vehicle spontaneously locks."  *Id.* ¶ 13.

17         On October 19, 2015, Meyers experienced this alleged defect.  *Id.* ¶ 16.  She opened the

18    rear door of her vehicle, placed her child inside, placed the remote inside the vehicle, shut the rear

19    door, and walked around to the driver's door.  *Id.*  When she attempted to open the driver's door,

20    the door was locked.  *Id.*  Because her child was too young to open the vehicle from inside,

21    Meyers was forced to break a window to open the vehicle.  *Id.*  After this lockout, she lodged a

22    complaint with BMW.  *Id.* ¶ 19.  Jay Hanson of BMW wrote an email to her explaining that "we

23    must be dealing either with a malfunction of the locking system or an inadvertent activation of the

24    locking system via either the remote transmitter or the Comfort Access System.  Again, it is not

25    impossible to lock a key in the vehicle – and to do so is not necessarily indicative of a

26    malfunction.  For example, if a door other than the driver's door is open and the locking button on

27    the transmitter is pressed, the vehicle will lock when the open door is closed.  If the user is

28    unaware of having pressed the locking button, then it would certainly appear that it had somehow

<div style="writing-mode: vertical-rl; text-align: center;">United States District Court<br>Northern District of California</div>

<div align="center">2</div>

1    locked itself."  *Id.*

2          Meyers alleges that BMW knew of the comfort access defect in 2007 because an internal

3    training document, entitled "Comfort Access vs-42 je 66 04 04 (093)" acknowledges that a "Class

4    Vehicle's doors can lock while the Class Vehicle's key is inside the Class Vehicle."  *Id.* ¶ 15.  She

5    states that numerous owners of BMW X5 vehicles have reported that their vehicles have

6    automatically locked while the remote control has been inside of their vehicles.  *Id.* ¶ 13.  She

7    pleads that, despite BMW's knowledge and awareness of the comfort access defect, it failed to

8    make repairs to resolve the defect, failed to modify owners' manuals so that they are accurate, and

9    failed to pay for damages suffered by consumers as a result of the comfort access defect.  *Id.* ¶ 21.

10   She contends that BMW knew the Class Vehicles were defective and not fit for their intended

11   purpose and concealed and failed to disclose the defect to her and the class members at the time of

12   purchase or thereafter.  *Id.* ¶ 25.

13         Meyers alleges that BMW widely advertises that its "Class Vehicles are extremely safe

14   vehicles, and are in fact, 'The Ultimate Driving Machine.' "  *Id.* ¶ 20.  However, because of the

15   comfort access defect, the cars are not safe.  *Id.*

16         Meyers bring claims alleging (1) violations of the California Unfair Competition Law

17   ("UCL"), (2) Fraud by Omission, (3) Breach of Implied Warranty, and (4) violations of the

18   CLRA.  BMW moves to dismiss all of Meyers's claims under Federal Rule of Civil Procedure

19   12(b)(6) asserting that Meyers has failed to state a viable claim.  It contends that there is no defect

20   with the comfort access system, that it has never represented that it is impossible for drivers to

21   lock themselves out of a BMW X5 vehicle, that it has instead affirmatively warned drivers of the

22   possibility of lockouts or a malfunction of the comfort access system, and that Meyers's subjective

23   misreading of the BMW owner's manual is insufficient to support her claims.  BMW argues that

24   dismissal is appropriate because Meyers has (1) failed to plead her fraud claims with particularity

25   or adequately alleged a defect, (2) has not established that BMW had a duty to disclose, (3) is not

26   in privity with BMW, necessary for her implied warranty claim, and (4) has not alleged that the

27   vehicles were unmerchantable.  I heard argument on BMW's motion on September 21, 2016.

28                                    **LEGAL STANDARD**

United States District Court
Northern District of California

1    Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

2    if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

3    dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

4    face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible

5    when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the

6    defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

7    (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

8    unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff

9    must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*,

10   550 U.S. at 555, 570.

11   In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

12   Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

13   plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

14   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

15   fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

16   2008).

17   Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a

18   complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, a party must

19   plead with "particularity the circumstances constituting the fraud," and the allegations must "be

20   specific enough to give defendants notice of the particular misconduct . . . so that they can defend

21   against the charge and not just deny that they have done anything wrong."  *See Kearns v. Ford

22   Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (citation omitted).  "Averments of fraud must be

23   accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-

24   Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

25   If the court dismisses the complaint, it "should grant leave to amend even if no request to

26   amend the pleading was made, unless it determines that the pleading could not possibly be cured

27   by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In

28   making this determination, the court should consider factors such as "the presence or absence of

undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*

*Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

### I. UCL, FRAUD, AND CLRA CLAIMS

Meyers alleges that BMW committed fraud by omission and engaged in deceptive and

fraudulent business practices by failing to disclose to consumers that the comfort access system

sometimes causes vehicles to spontaneously lock when the key remote is inside the vehicle.  FAC

¶ 13, 30.  Meyers brings claims under the CLRA, the UCL, and alleges a general violation of fraud

by omission.

To sustain a fraudulent omission claim under the CLRA or the UCL, a plaintiff must allege

either that the "omission is contrary to a representation actually made by the defendant, or an

omission of a fact the defendant was obligated to disclose." *Falk v. Gen. Motors Corp.*, 496 F.

Supp. 2d 1088, 1094-95 (N.D. Cal. 2007).  Further, the plaintiff must allege that the omission is

related to a "safety issue." *Wilson*, 668 F.3d at 1141.  To properly allege an actionable omission

with regards to a safety issue, plaintiffs must allege (1) a defect; (2) a safety hazard; (3) a causal

connection between the alleged defect and the alleged safety hazard; and (4) that the defendant

knew of the defect at the time a sale was made.  *Id.* at 1143-45.

### A. Duty to Disclose

A plaintiff may assert duty to disclose in four circumstances: "(1) when the defendant is in

a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact

from the plaintiff; and (4) when the defendant makes partial representations but also suppresses

some material fact." *Falk*, 496 F. Supp. 2d at 1095.

Meyers has alleged that BMW had a duty to disclose because it had exclusive knowledge

of the comfort access defect.  She pleads that BMW knew of the defect through its "dealerships,

pre-release data, and training manuals, among other internal sources of aggregate information

about the problem." FAC ¶ 29.  She further submits three customer complaints from BMW X5

United States District Court
Northern District of California

United States District Court
Northern District of California

1    owners which were submitted to the National Highway Traffic Safety Administration

2    ("NHTSA"). *Id.* ¶ 13. At least two of these complaints, dating from 2010 and 2011 appear to pre-

3    date Meyers's purchase of her car, which is a 2013 model. *Id.*[2]

4       Courts disagree on whether consumer complaints are sufficient to demonstrate that a

5    defendant knew of an alleged defect. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir.

6    2012). In *Wilson*, the Ninth Circuit noted that some courts have found that customer complaints

7    can give rise to an inference that defendants knew of a defect, while others have said that such

8    complaints, on their own, are insufficient to show such knowledge. *Compare Kowalsky v.*

9    *Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1145 (N.D. Cal. 2010) ("[I]n some cases, allegations

10    of consumer complaints posted on a defendant's own customer support website may be sufficient

11    to raise a reasonable inference that the defendant knew of a product defect."), *with Berenblat v.*

12    *Apple, Inc.*, No 08-cv-4969-PVT, 2010 WL 1460297, at *9 (N.D. Cal. 2010) (Customer

13    complaint, "[b]y themselves [] are insufficient to show that [the manufacturer] had knowledge [of

14    the defect].").

15       The Ninth Circuit's discussion in *Wilson* suggests that customer complaints may support

16    knowledge when they are submitted to a forum the defendant is likely to view, and where they are

17    submitted before the plaintiff purchased the product. In *Wilson* the court concluded that plaintiffs

18    had not adequately alleged exclusive knowledge where they pointed to "undated customer

19    complaints" from an unclear source, and also alleged that HP had "access to the aggregate

20    information and data" related to the claimed defect. *Wilson*, 668 F.3d at 1146-47. The *Wilson*

21    court criticized the value of the customer complaints, noting that plaintiffs did not indicate "when

22    or how the complaints were made." The court also highlighted that, because the complaints were

23    undated, they could "not support an inference that HP was aware of the defect at the time it sold

24

---

25    [2] Meyers also alleges that a 2007 internal training document titled "Comfort Access vs-42 je 66 04
04 (093)" demonstrates that BMW knew of the comfort access defect in 2007 because the

26    document acknowledges that "a Class Vehicle's doors can lock while the Class Vehicle's key is
inside the Class Vehicle." FAC ¶ 15. Meyers does not cite to a particular section of the document

27    that acknowledges this information. However, simply acknowledging that the vehicle's doors can
lock while the Class Vehicle's key is inside the Class Vehicle does not necessarily indicate an

28    awareness that the comfort access system causes vehicles to spontaneously lock. I therefore do
not rely on the training document in my analysis.

the Laptops to Plaintiffs." *Id.* at 1148.

Here, Meyers has submitted several dated complaints posted to the NHTSA website. As two of these complaints are dated prior to the time Meyers must have purchased her car, BMW could have accessed this information and been aware of the complaints at the time Meyers purchased her vehicle. Further, because manufacturers such as BMW use the NHTSA website to communicate information to consumers, it is reasonable to infer that BMW has knowledge of and is aware of the complaints submitted by consumers to the NHTSA. These consumer complaints, in conjunction with Meyers's other allegations that BMW knew of the comfort access defect through its "dealerships, pre-release data, and training manuals, among other internal sources of aggregate information about the problem," can give rise to the inference that BMW knew of the comfort access defect and had a duty to disclose it. Meyers has adequately pleaded that BMW had exclusive knowledge of the comfort access defect.

Meyers has also alleged that BMW made a partial representation regarding the comfort access system. She states that BMW represented to consumers that "To lock the vehicle, the remote control must be located outside of the vehicle." FAC ¶ 19. This statement could indicate to consumers that the comfort access system will not lock the vehicle unless the remote control is outside the vehicle. She asserts that contrary to this, the comfort access system is defective, and can cause vehicles to spontaneously lock when the remote is inside. *Id.* ¶ 13. Accepting her allegations as true, BMW's representation about the function of the comfort access system is misleading. The statement, which indicates that a user can only activate the comfort access system if the key remote is outside the car, may be literally true, but it omits that the system may nevertheless spontaneously activate the locks on its own while the remote is inside the vehicle. On these facts, Meyers has adequately pleaded partial representation and a duty to disclose. *See In re Apple In-App Purchas Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (partial representation was met where defendant represented that its app was free, but did not disclose the potential for in-app purchases). She has adequately alleged that BMW made a partial representation regarding the comfort access system.

Meyers has adequately pleaded that BMW had a duty to disclose because it had exclusive

1   knowledge of the comfort access defect, and because it made a partial representation about the

2   comfort access defect.  Although as discussed below, Meyers has failed to adequately plead active

3   concealment, because Meyers has pleaded two viable theories to sustain her fraud by omission

4   claim, I will not dismiss her CLRA or UCL claims for this reason.

5       **B.  Defect**

6       Meyers has adequately alleged a design defect.  Meyers alleges that the comfort access

7   system is defective because "sometimes while the remote control is located inside a Class Vehicle,

8   the Class Vehicle spontaneously locks."  FAC ¶ 13.  Although Meyers does not allege the

9   mechanical method by which this happens, she identifies that the defect is with the comfort access

10  system, she notes the defect works by spontaneously locking the vehicle, and she alleges that this

11  happens when the remote control is located inside the vehicle.  *Id.*  Meyers also presents factual

12  allegations from her own personal experience where she believes the comfort access system

13  caused the vehicle to spontaneously lock.  *Id.* ¶ 16.  She also submits customer complaints in

14  which individuals recount similar lockout experiences where their BMW's have spontaneously

15  locked while their keys were inside the vehicle.  *Id.* ¶ 13.  These factual allegations, that the

16  comfort access system can, and has, spontaneously locked vehicles while the keys were inside, are

17  sufficient to allege a design defect with the comfort access system.

18      **C.  Safety Hazard**

19      Meyers has adequately alleged "the existence of an unreasonable safety risk."  *Wilson*, 668

20  F.3d at 1145.  She asserts that the comfort access system's spontaneous locking defect creates an

21  unreasonable safety risk that children will be locked inside a car.  FAC ¶ 18.  She cites that

22  "[f]rom 1998 to 2015, ever year at least 24 children have died from heatstroke as the result of

23  being locked inside vehicles."  *Id.*  She has adequately pleaded the existence of an unreasonable

24  safety risk because she has alleged that children locked in vehicles can suffer serious injury and

25  death.

26      **D.  Causal Connection Between Alleged Defect and Alleged Safety Risk**

27      Meyers has also adequately alleged a causal connection between the alleged defect and

28  alleged safety risk because she states that the comfort access system's spontaneous locking defect

United States District Court
Northern District of California

United States District Court
Northern District of California

1    increases the risk that children will be locked in cars.  *Id.*  She explains that she personally locked

2    her child in the car as a result of the comfort access defect and points to consumer complaints

3    where other BMW X5 drivers have had similar experiences.  *Id.*  ¶ 13.  BMW argues that Meyers

4    has not adequately alleged a causal connection because the BMW owners' manual instructs that

5    drivers should always take their key remotes with them, and the comfort access system does not

6    present any safety risk if used as intended.  Motion to Dismiss ("Mot."), 13 (Dkt. No. 21-1).

7    While it appears that Meyers could have prevented a lockout by keeping her key remote on her

8    person, this does not mean there is no causal link between the defect and the safety risk.  Even if

9    there are ways to prevent lockouts, the comfort access defect may make it more likely for drivers

10   to lock their children in cars if, as alleged, it causes the vehicles to spontaneously lock.  Meyers

11   suggests that the comfort access defect makes it more likely that a driver will inadvertently lock a

12   child in the car.  This is sufficient to plead a direct link between the defect alleged – spontaneous

13   locking – and the safety hazard alleged – children locked in cars.

14       **E.  Reliance**

15           BMW argues that Meyers cannot sustain her UCL and CLRA claims because she has not

16   alleged actual reliance.  Mot. 4.  Meyers contends that that she need not allege actual reliance on

17   an omission claim and, alternatively, argues that the court can infer that she saw BMW

18   advertisements promoting its vehicles as safe and relied on them.  Opposition ("Oppo.") 20, (Dkt.

19   No. 31).

20           "For fraud based claims under the CLRA and UCL, plaintiff must also plead actual

21   reliance."  *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010).

22   "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was

23   an immediate cause of the plaintiff's injury-producing conduct.  A plaintiff may do so by simply

24   proving that, had the omitted information been disclosed, one would have been aware of it and

25   behaved differently.  That one would have behaved differently can be presumed, or at least

26   inferred, when the omission is material."  *Daniel v. Ford Motor Co.*, 806 F. 3d 1217, 1225 (9th

27   Cir. 2015) (internal citations and quotations omitted).

28           Meyers has adequately alleged that the omission at issue was material because it related to

9

1   a safety hazard.  *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 917-19 (C.D. Cal.

2   2010) (Alleged defects that create "unreasonable safety risks" are material.).  But she must also

3   show that, had the omitted information been disclosed, she would have been aware of it.  *Daniel*,

4   806 F. 3d at 1225.

5         Meyers has alleged no facts indicating that she saw or relied on any BMW materials or

6   advertisements.  Although she makes general allegations that BMW advertises its vehicles, she

7   does not allege that she herself viewed any of these materials.  BMW argues that because she has

8   not alleged any facts indicating that she viewed or relied on BMW representations, she cannot

9   plausibly allege that, had a disclosure been made regarding the comfort access defect, she would

10  have seen it.

11        In *Daniel*, the Ninth Circuit noted that there are "various ways in which a plaintiff can

12  demonstrate that she would have been aware of a defect, had disclosure been made."  *Daniel*, 806

13  F. 3d at 1226.  Although the plaintiffs in that case had not viewed any advertisements, the Ninth

14  Circuit concluded that they had adequately alleged that they would have been aware of a defect,

15  had Ford disclosed it, because they "presented evidence that they interacted with and received

16  information from sales representatives at authorized Ford dealerships prior to purchasing their

17  Focuses."  *Id.*  While *Daniel* supports the idea that there are many ways a plaintiff can establish

18  reliance, Meyers has not alleged any facts to indicate that she would have been aware of a

19  disclosure if one was made.  Unlike in *Daniel*, Meyers does not allege that she interacted with

20  BMW representatives or sales associates prior to purchasing her vehicle.  She does not disclose

21  when or from whom she purchased her vehicle and does not provide any details indicating that she

22  relied on BMW's alleged omissions.  While the standard for pleading reliance in an omission case

23  is low, Meyers has not provided any facts that would indicate she relied on BMW's omissions.

24        Meyers has adequately alleged (1) that BMW had a duty to disclose information on the

25  comfort access defect because it had exclusive knowledge and because it made partial

26  representations; (2) that there is a comfort access defect that causes spontaneous locking; (3) that

27  children locked in cars is an unreasonable safety hazard; and (4) that there is a causal link between

28  the spontaneous locking and the hazard of locking children in cars.  She has not adequately alleged

United States District Court
Northern District of California

United States District Court
Northern District of California

1  reliance.  Because this is a necessary component of any consumer UCL or CLRA claim, she has

2  not adequately alleged fraud by omission under the UCL and CLRA.  I GRANT BMW's motion

3  to dismiss these claims.

4      To the extent that Meyers intends to bring a misrepresentation or "unfair" claim under the

5  UCL or CLRA, Meyers's failure to allege reliance is fatal to these claims as well.  I GRANT

6  BMW's motion to dismiss any remaining UCL and CLRA claims.

7  **II.  COMMON LAW FRAUD**

8      To sustain a California common law fraudulent omission claim, a plaintiff must allege:

9  "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to

10  disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed

11  the facts with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the

12  fact and would not have acted as he did if he had known of the concealed or suppressed fact, and

13  (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained

14  damage."  *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435, 454 (N.D. Cal. 2012).  These elements

15  are "essentially identical to those for a claim of active concealment under the CLRA and the UCL

16  fraud prong."  *Elias v. Hewlett-Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, *5 (N.D.

17  Cal. 2014)

18      Meyers has not adequately alleged active concealment because she has not alleged that

19  BMW took any affirmative acts to conceal.  "An allegation of active concealment must plead more

20  than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the

21  defendant sought to suppress information in the public domain or obscure the consumers' ability

22  to discover it."  *Taragan v. Nissan North America, Inc.*, No. 09-cv-3660-SBA, 2013 WL 3157918,

23  *7 (N.D. Cal. Jun. 20, 2013).  Meyers alleges that BMW actively concealed the comfort access

24  defect because "Defendants did not disclose to consumers that the Comfort Access Defect exists,

25  did not reimburse consumers for costs incurred in connection with the Comfort Access Defect, and

26  did not correct mistakes in Class Vehicles' owner's manuals."  FAC ¶ 52.  This is insufficient

27  because Meyers has alleged only that BMW failed to disclose or take certain actions.  These

28  alleged omissions are insufficient to sustain an active concealment claim.

1    BMW's motion to dismiss this claim is GRANTED.

2    **III.  IMPLIED WARRANTY OF MERCHANTABILITY**

3    Meyers has failed to adequately plead a breach of the implied warranty of merchantability

4    under the California Commercial Code because she has not alleged facts indicating she is in

5    privity with BMW or that she falls under an exception to the privity requirement.  "Under

6    California Commercial Code section 2314 . . . a plaintiff asserting breach of warranty claims must

7    stand in vertical contractual privity with the defendant."  *Clemens v. Daimlerchrysler*, 534 F.3d

8    1017, 1023 (9th Cir. 2008).  "[A]n end consumer . . . who buys from a retailer is not in privity

9    with a manufacturer."  *Id.*  There are two exceptions to this general privity requirement: (1) "when

10   the plaintiff relies on written labels or advertisements of a manufacturer," and (2) "where the end

11   user is an employee of the purchaser."  *Id.* at 1024.

12   Meyers does not allege when, or from whom, she purchased her BMW X5.  She pleads

13   only that she purchased her vehicle in San Francisco.  FAC ¶ 2.  While it is unclear from whom

14   she purchased her BMW X5, she could not have purchased it directly from BMW, which

15   manufactures, but does not sell vehicles, directly to consumers.  She is, therefore, not in privity

16   with BMW.

17   Meyers does not fall under either of the privity exceptions in implied warranty cases.  She

18   does not allege that she relied on any written labels or advertisements of BMW when she

19   purchased her vehicle.  Although she states generally that BMW advertises that its "Class Vehicles

20   are extremely safe vehicles, and are in fact, 'The Ultimate Driving Machine,' " she does not allege

21   that she personally viewed, read, or relied on any such advertisements.  *Id.* ¶ 20.  Further, she

22   clearly does not fall under the second exception as she was not an employee of the purchaser.  As

23   Meyers is not in privity with BMW and does not fall under one of the exceptions to the privity

24   requirement, her implied warranty claim fails.  *Clemens*, 534 F.3d at 1023.

25   In her opposition, Meyers argues that privity is not required in implied warranty cases

26   brought under the Song-Beverly Consumer Warranty Act.  Oppo. 27.  However, she has not

27   alleged a claim under this Act.  Because I cannot consider claims brought for the first time in the

28   pleadings, and because she has not alleged vertical privity, as required by *Clemens*, to sustain a

United States District Court
Northern District of California

claim under the California Commercial Code, I GRANT BMW's motion to dismiss Meyers's implied warrant claim.

### CONCLUSION

For the reasons outlined above I GRANT BMW's motion to dismiss Meyers's UCL and CLRA fraudulent omission claims; GRANT BMW's motion to dismiss Meyers's remaining UCL and CLRA claims; GRANT BMW's motion to dismiss Meyers's Common Law Fraud claim; and GRANT BMW's motion to dismiss Meyers's Implied Warranty Claim.  Meyers will have 20 days to file an amended complaint.

**IT IS SO ORDERED**.

Dated: October 11, 2016



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California