1  Robert L. Starr, Bar No. 183052
   robert@starrlaw.com
2  THE LAW OFFICE OF ROBERT L. STARR, APC
   23901 Calabasas Road, Suite 2072
3  Calabasas, California 91302
   Telephone: (818) 225-9040
4  Facsimile: (818) 225-9042
5
   Stephen M. Harris, Nar No. 110626
6  stephen@smh-legal.com
   THE LAW OFFICE OF STEPHEN M. HARRIS, APC
7  6320 Canoga Avenue, Suite 1500
   Woodland Hills, California 91367
8  Telephone: (818) 924-3103
   Facsimile: (818) 924-3079
9
10 Attorneys for Plaintiff
   KIEVA MYERS, individually, and on behalf of a class
11 of similarly situated individuals
12
13
14                    UNITED STATES DISTRICT COURT
15       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
16

| | |
|---|---|
| 17  KIEVA MYERS, individually, and on behalf of a class of similarly situated individuals, | CASE NO. 3:16-CV-00412-WHO |
| 18            Plaintiff, | Assigned for All Purposes to the Honorable William H. Orrick |
| 19         vs. | Date:       3-28-18 |
| 20  BMW OF NORTH AMERICA, LLC, | Time       2:00 p.m. Courtroom: 2 |
| 21            Defendants. | |
| 22  | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITES** |
| 23 | |
| 24 | |

25
26
27
28

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT on March 28, 2018 at 2:00 p.m., or as soon thereafter as

3    the matter may be heard in Courtroom 2 of the above-entitled Court, 17th Floor, located at 450

4    Golden Gate Avenue, San Francisco, California, Plaintiff Kieva Myers ("Plaintiff" or "Myers")

5    will and hereby do move this Court to:

6        1.    Preliminarily approve the Settlement Agreement and Release

7    ("Agreement" or "Settlement"), attached as Exhibit 1 to the Declaration of Stephen M. Harris

8    ("Harris Declaration").

9        2.    Preliminarily approve the Notice, Claim Form, and Owners' Manual Insert attached

10   as exhibits 2-4 to the Harris Declaration.

11       3.    Permit the filing of Plaintiff's Third Amended Complaint for settlement purposes,

12   attached as exhibit 5 to the Harris Declaration.

13       4.    Conditionally certify, for settlement purposes only, a settlement class of all persons

14   throughout the United States who currently own or lease or who previously owned or leased

15   BMW NA 2007-2013 X5 vehicles, with a production date from October 1, 2006 through June 30,

16   2013, which were distributed by defendant BMW of North America LLC ("BMW") and equipped

17   with optional Comfort Access System, made for sale and/or lease in the U.S. market, and that

18   were sold or leased to a Class Member who registered and operated the vehicle in the United

19   States or Puerto Rico.

20       3.    Appoint Plaintiff as the Class Representative.

21       4.    Appoint Stephen M. Harris of the Law Offices of Stephen M. Harris, P.C., and

22   Robert L. Starr of the Law Offices of Robert L. Starr, APC as Class Counsel.

23       5.    Set a hearing date for final approval of the class action settlement.

24       This Motion is based upon: (1) this Notice of Motion and Motion; (2) the attached

25   Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class

26   Action Settlement; (3) the Harris Declaration, and the exhibits attached thereto; (4) the [Proposed]

27   Order Granting Preliminary Approval of Class Action Settlement, filed concurrently herewith; (5)

28   the records, pleadings, and papers filed in this action; and (6) upon such other documentary and

1

1  oral evidence or argument as may be presented to the Court at the hearing of this Motion.

2  DATED: February 9, 2018

THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.

By:        /s/ Stephen M. Harris
           Stephen M. Harris
           Attorneys for Plaintiff Kieva Myers

2

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................ 3

II. FACTS AND PROCEDURE .......................................................................................... 4

    A.    The Comfort Access Defect ................................................................................. 4

    B.    Named Plaintiff's Lease and Purchase of a Class Vehicle with Comfort
         Access Defect ....................................................................................................... 4

    C.    Myers Experienced The Comfort Access Defect ................................................ 4

    D.    Myers and Class Members Were Not Aware of The Defect ............................... 5

    E.    BMW's Knowledge of The Defect ..................................................................... 6

    F.    BMW Refuses to Rectify The Problem ............................................................... 7

    G.    Claimed Losses .................................................................................................... 7

    H.    The Class Action Complaint Against BMW ....................................................... 7

    I.    Investigation And Discovery ............................................................................... 8

    J.    The Settlement Agreement .................................................................................. 8

    K.    The Proposed Settlement ..................................................................................... 9

         1.    The Proposed Settlement Class ............................................................... 9

         2.    The Proposed Payment and Reimbursement Schedule ............................ 10

         3.    The Proposed Owners' Manual Insert ..................................................... 10

         4.    The Proposed Notice to the Class and Others of the Settlement .............. 10

         5.    The Proposed Release of the Class ........................................................... 11

         6.    Attorneys' Fees, Costs and Enhancements .............................................. 11

III. ARGUMENT ............................................................................................................... 11

    A.    The Proposed Class Action Settlement Should Receive Preliminary
         Approval ............................................................................................................. 11

         1.    Overview of the Class Action Settlement Process and the Role of
              Preliminary Approval .............................................................................. 11

         2.    The Proposed Settlement Is Well Within the Range of
              Reasonableness Warranting Preliminary Approval and Justified in
              Light of the Risks of Continued Litigation ............................................. 13

    B.    Conditional Class Certification Is Appropriate for Settlement Purposes ............. 15

1.  The Proposed Class Meets the Requirements of Rule 23 ........................... 15

2.  The Proposed Class Is Sufficiently Numerous and Ascertainable.............. 15

3.  There are Questions of Law and Fact that Are Common to the Class........ 15

4.  Plaintiff's Claims are Typical of the Proposed Settlement Class................ 16

5.  Plaintiff and Plaintiff's Counsel Will Adequately Represent the
    Interests of the Proposed Settlement Class ................................................. 17

6.  Common Issues Predominate Over Individual Issues.................................. 18

7.  Class Settlement Is Superior to Other Available Means of
    Resolution..................................................................................................... 19

C.  The Proposed Notice Plan Meets the Requirements of Rule 23 .............................. 20

IV. CONCLUSION ........................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

**CASES**

3

4  *Acosta v. Trans Union*, 243 F.R.D. 377 (C.D. Cal. 2007) ............................................................ 12,14

5  *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................................ 15

6  *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)............................................................................ 17

7  *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004)........................................... 16, 18

8  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)......................... 15

9  *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. Ohio 2006) ................................................... 16, 18

10  *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ................... 16

11  *Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ......................................................................... 12

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998)............................................................ passim

13  *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998) ............................................... 15

14  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................ 13

15  *In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ................................................................ 14

16  *In Re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda County 2008)
.................................................................................................................................................... 13

17
*In re Hyundai and Kia Fuel Economy Litigation* (9th Cir., Jan. 23, 2018, No. 15-56014) 2018 WL
18  505343 .................................................................................................................................... 14,19

19  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) ....................................... 12

20  *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ......................................... 16

21  *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................. 14, 16, 18

22  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) .............................................. 16

23  *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)......................................................................... 16

24  *Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir. 1969)................................... 15

25  *Tait v. BSH Home Appliances Corp.*, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ..................... 18

26  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .............................................. 14, 19

27  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................ 15

28  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)................................................................. 14

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) .............................. 16, 18, 19,20

**Statutes**

Fed. R. Civ. P. 23 ............................................................................................................... passim

**Treatises**

4 Newberg & Conte................................................................................................................. 12

Manual for Complex Litigation.......................................................................................... 12, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Myers belongs to a putative nationwide class of current and former owners and lessees of certain BMW of North America, LLC ("BMW") X5 vehicles, with a production date from October of 2006 through June of 2013, which were distributed by BMW and equipped with the optional Comfort Access System. The total number of Class Vehicles (nationwide) is 219,233. Myers allege that defects in the design, manufacture, and assembly of the comfort access system in the class vehicles resulted in unintended locking of the Class Vehicles in situations where Class Members did not intend to lock the Vehicle using the key fob or Comfort Access System. (Docket, "Dkt." No. 36, Second Amended Complaint, ¶¶ 11-16).

Plaintiff and BMW have reached a settlement of nationwide class claims subject to approval by this Court. BMW has agreed to reimburse all class members who have incurred costs in connection with spontaneous or unintended locking of their Class Vehicles. BMW's obligations are based upon the payment and reimbursement provisions of the Agreement, more fully described below and in the Agreement attached as exhibit 1. (See, Exhibit 1 to Harris Declaration). BMW is also providing an owner's manual insert that reminds vehicle owners, among other things, to always carry the vehicles' key fob on their person, to avoid a potential lockout situation.

Plaintiff and her counsel believe the Settlement is fair and reasonable, providing class members' similar if not superior remedies than they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with trial.

Plaintiff respectfully requests that this Court review the negotiated Agreement, attached as Exhibit 1 to the accompanying Harris Declaration, and enter an order: (1) granting preliminary approval of the Settlement; (2); permitting the filing of the Third Amended Complaint, attached as exhibit 5 to the Harris Declaration; (3) certifying a class for settlement purposes and appointing Plaintiff as class representative and Plaintiff's counsel as class counsel; (4) approving the parties' proposed form and method of giving class members notice of the action and proposed Settlement;

3

1  (5) directing that notice be given to class members in the proposed form and manner; and (5)

2  setting a hearing on whether the Court should grant final approval of the Settlement, enter

3  judgment, award attorneys' fees and expenses to Plaintiff's counsel, and grant incentive awards to

4  Plaintiff.

## II.

## FACTS AND PROCEDURE

### A.   The Comfort Access Defect

Plaintiff contends that the comfort access feature is defective. The defect is that sometimes while the remote control is located inside the Class Vehicle, the vehicle spontaneously locks (Comfort Access Defect).  Plaintiff contends that this defect has been reported by numerous owners and lessees of Class Vehicles, sometimes trapping children inside the vehicles.  (Second Amended Complaint,  "SAC", ¶ 13.) BMW was aware of the Comfort Access Defect, as far back as 2007. (*Id.* ¶¶ 15-16.)

### B.   Named Plaintiff's Lease and Purchase of a Class Vehicle with Comfort Access Defect

Myers purchased a used 2013 model year BMW X5 vehicle bearing VIN 5UXZW0C50D0B95201. (SAC ¶ 2.) Myers purchased the Class Vehicle in August of 2015. (*Id.*) Myers' vehicle came equipped with the Comfort Access Feature, which is described by BMW's owner's manual: "the concept [of the feature, is that] the vehicle can be accessed without activating the remote control. All you need to do is to have the remote control with you, e.g., in your pocket. The [Class] Vehicle automatically detects the remote control when it is nearby or in the passenger compartment." (*Id.* ¶ 12.) The owner's manual also states that "[in order] to lock the vehicle, the remote control must be located outside of the vehicle." (*Id*). Further, the manual states: "If a remote control is detected within the vehicle, the vehicle does not lock or is unlocked again." (*Id.*) (SAC, ¶¶ 21-22.)

### C.   Myers Experienced The Comfort Access Defect

On October 19, 2015, Myers experienced the Comfort Access Defect. Myers opened the rear door of the vehicle, placed her child inside of the vehicle, placed the remote inside the

4

1   vehicle, and shut the rear door of the vehicle. Next, Myers walked around to the driver's door, and
2   attempted to open the driver's door. Prior to Myers getting to the driver's door, the vehicle locked,
3   locking her out of the vehicle and locking her very young child inside the vehicle. Myers' child
4   was too young to know how to open the door to the vehicle, and was trapped inside. (*Id.* ¶ 17.) To
5   rescue Myers' child, it was necessary to break one of Myers' windows, doing damage to the
6   vehicle and terrifying Myers's child. Myers had to pay a total of $192.25 to Best Service Auto
7   Glass to repair the window that was broken to rescue her child. Additionally, the vehicle suffered
8   other damage during the ordeal. (*Id.*, ¶ 18.)

9        Following Myers' experiencing the Comfort Access Defect, a complaint was made by the
10  Myers family to BMW regarding the October 19, 2015 occurrence. In response to this complaint,
11  on November 4, 2015, Jay Hanson of BMW wrote an email to the Myers family. An excerpt of
12  Mr. Hanson's email read as follows, "Therefore we must be dealing either with a malfunction of
13  the locking system or an inadvertent activation of the locking system via either the remote
14  transmitter or the Comfort Access System. Again, it is not impossible to lock a key in the vehicle
15  – and to do so is not necessary indicative of a malfunction. For example, if a door other than the
16  driver's door is open and the locking button on the transmitter is pressed, the vehicle will lock
17  when the open door is closed. If the user is unaware of having pressed the locking button, then it
18  would certainly appear that it had somehow locked itself." Plaintiff contends that Mr. Hanson's
19  email completely contradicts the BMW owner's manual. (*Id.* ¶ 21.)

20  **D.   Myers and Class Members Were Not Aware of The Defect**

21       Prior to Myers' used Vehicle purchase, in August of 2015, Myers' husband performed very
22  thorough research about the Myers Vehicle. The research included review of BMW's web-site
23  regarding the Vehicle , and such third-party web-sites as, for example, Edmunds and Car and
24  Driver. This research included research into the Comfort Access Feature, some review of the
25  owners' manual, and review of BMW Brochures and other sales pitches regarding the Comfort
26  Access Feature. Myers' husband discussed the research with her in detail. Despite the research,
27  Myers was not aware of the fact that the Vehicle could spontaneously lock with the key inside the
28  vehicle. There was no disclosure in all the materials reviewed by Myers's husband, which were

5

1   discussed with Myers, about the vehicle spontaneously locking. (*Id.*, ¶ 3.)

2         Based on the research which was performed regarding the Myers Vehicle, Myers would

3   have been aware of a disclosure about the propensity of the vehicle to spontaneously lock while

4   the key was inside the vehicle, if any such disclosure had been made. (*Id.*)

5   **E.   BMW's Knowledge of The Defect**

6         Plaintiff contends that BMW knew that the Class Vehicles were defective and not fit for

7   their intended purpose of providing consumers with safe and reliable transportation. Nevertheless,

8   BMW actively concealed and failed to disclose this defect to Myers and the Class Members at the

9   time of purchase or lease and thereafter. (*Id.* ¶ 28.) Only BMW had access to information about

10  the significant risks associated with the Comfort Access Defect, through BMW's dealerships, pre-

11  release testing data, warranty data, customer complaint data, replacement part sales data, and

12  training manuals, among other internal sources of aggregate information about the problem. (*Id.* ¶

13  32.)

14        During discovery, BMW produced documents substantiating that it was aware that it was

15  possible for the vehicle doors to be locked even though the key with the Comfort Access function

16  was inside the vehicle. In simplistic terms, BMW's analysis shows that the Comfort Access

17  functions with a microsecond delay during which the vehicles' doors can be unlocked and

18  immediately relocked if the customer's hand remains on the door handle's Comfort Access sensor.

19  This may result in a key fob placed inside the vehicle not being detected. In such circumstances,

20  the consumer could put the key in the vehicle (or their coat or purse containing the key) and then

21  shut the door after the door has been unlocked and relocked, thereby being locked out of the

22  vehicle. (Declaration of Stephen M. Harris ("Harris Declaration", ¶¶ 8-9.)

23        Plaintiff contends that the parent company of BMW (BMW AG) recommended advising

24  consumers that they should keep the drivers' door open while opening or closing the passenger or

25  rear doors, or keep the remote out of the vehicle while loading it. BMW produced an internal

26  communication to dealers about this issue, but the problem was not disclosed to customers

27  generally. The only recommendation to dealers was to discuss the issue with consumers who had

28  already experienced the problem. Moreover, BMW's publicly available advice to consumers was

6

1  that the vehicle cannot lock while the key with comfort access was inside the vehicle. (*Id.*)

2  **F.    BMW Refuses to Rectify The Problem**

3  BMW has been advised of the damages sustained as a result of the Myers Vehicle
4  experiencing the Comfort Access Defect, however, BMW has failed to unconditionally reimburse
5  Myers for all of the damages that have resulted from the Comfort Access Defect. (Second
6  Amended Complaint, ¶ 26.) Plaintiff understands that other consumers were similarly advised by
7  BMW that it was not responsible for the vehicle locking as a result of the Comfort Access Defect.
8  (*Id.*, ¶ 33, c.)

9  **G.    Claimed Losses**

10  Because of BMW's misconduct, Myers and the other owners and lessees of Class Vehicles
11  have been harmed and have suffered actual damages. The actual damages include, but are not
12  limited to, the Class Vehicles continuing to experience the Comfort Access Defect, and that Class
13  Members have suffered unreimbursed out of pocket expenses because of the Comfort Access
14  Defect. (*Id.* ¶ 27.)

15  **H.    The Class Action Complaint Against BMW**

16  On January 24, 2016, Myers brought a class action against BMW on behalf herself and a
17  class of California consumers alleging (1) violations of California Consumer Legal Remedies Act,
18  (2) violations of California Unfair Business Practices Act, (3) breach of implied warranty, and (4)
19  fraud. (Dkt. No. 1.) Myers then filed a first amended complaint in April of 2016, containing the
20  same theories of recovery. (Dkt. No. 2.) After the filing of the First Amended Complaint, BMW
21  brought a motion to dismiss, which was opposed by Myers.  The court granted the motion, with
22  leave to amend. (Dkt. No's. 23, 31-33, 35.)

23  Myers then filed a Second Amended Complaint, in October of 2016. (Dkt. No. 36.) BMW
24  again brought a motion to dismiss, which was opposed by Myers.  (Dkt. No.'s 37, 38, and 39.) The
25  court granted the motion in part, dismissing the common law fraud claim. But the court denied the
26  motion to dismiss the UCL and CLRA claims. (Dkt. No. 40.) BMW filed its answer to the
27  operative complaint in January of 2017. (Dkt. No. 41.)

28

1  *I.    Investigation And Discovery*

2      Plaintiff conducted a pre-filing and post-filing investigation, including, but not limited to,
3  retaining an expert consultant regarding the Comfort Access Defect, review of publicly available
4  information relating to the nature and extent of the Comfort Access Defect, review of on-line
5  complaints and NHTSA complaints, review of lawsuits filed in Southern California relating to this
6  problem, review of literature about the dangers posed to children locked in parked cars, and
7  obtaining and reviewing approximately 3,500 pages of documents produced by BMW in response
8  to Plaintiff's formal discovery requests, including warranty and good will claims data, call center
9  records, and customer complaint records. The investigation and discovery revealed other instances
10  of consumers locking their keys inside class vehicles, other complaints relating to children being
11  unintentionally locked inside class vehicles, a complaint by a parent being cut by class when the
12  vehicle window was smashed to rescue a child, and other medical reports about children being
13  lethargic as a result of being locked inside class vehicles. (Harris Declaration, ¶¶ 11-12.)

14      Plaintiff further propounded written discovery, and received written responses thereto.
15  Plaintiff's counsel also travelled to New Jersey and conducted four depositions of BMW witnesses
16  over several days, with the witnesses produced in response to Plaintiff's person most
17  knowledgeable deposition notice. (*Id.*, ¶ 12.)

18  *J.    The Settlement Agreement*

19      The parties had discussed resolution of the case early in the litigation, but could not agree
20  on the terms of a comprehensive class action settlement. After the depositions of BMW's
21  witnesses in New Jersey, the parties renewed their discussions and were able to reach a resolution
22  of all issues. The parties first agreed on all aspects of the settlement (other than attorneys' fees,
23  costs, and enhancement) including agreement to a nationwide class for settlement purposes only.
24  Subsequently, the parties negotiated the attorneys' fees, costs, and the enhancement amount. A
25  formal Settlement Agreement was then prepared and executed by all parties in December of 2017.
26  (*Id.*, ¶¶ 13-14.) Thereafter, the parties negotiated the notice and claim form. (*Id.* at ¶ 14.)

27      As part of the settlement, Plaintiff submits a proposed Third Amended Complaint, to be
28  filed consistent with the settlement, and asserting claims on a nationwide basis. (*Id.*, ¶ 15, and

8

1   Exhibit 5, attached thereto.)  The parties agree that because the Third Amended Complaint is

2   being submitted to conform the complaint to the Settlement, BMW need not file a response to the

3   Third Amended Complaint at this time, pending approval of the Settlement.

4        The court granted several extensions of time for Plaintiff to file a class certification

5   motion, and thereafter this motion for preliminary approval, while the parties continued with their

6   negotiations. (See, Dkt. No.'s 46-53.) Ultimately, the court granted the stipulation of the parties to

7   have the motion filed on the present date. (See, Dkt. No.'s 52-53.)

8   **K.    *The Proposed Settlement***

9        **1.    The Proposed Settlement Class**

10       The settlement class consists of "all residents in the United States (including Puerto Rico),

11   who currently own or lease or previously owned or leased, a Class Vehicle" ("Settlement Class").

12   (Agreement, § I, ¶ 10).) Excluded from the Settlement Class are the following: "(1) BMW NA, its

13   related entities, parent companies, subsidiaries and affiliates, and their respective officers,

14   directors, and employees; (2) insurers of the Class Vehicles; (3) all persons and/or entities

15   claiming to be subrogated to the rights of Class Members; (4) issuers or providers of extended

16   vehicle warranties or extended service contracts; (5) individuals and/or entities who validly and

17   timely opt-out of the Settlement; (6) consumers or businesses that have purchased Class Vehicles

18   previously deemed a total loss (i.e. salvage) (subject to verification through Carfax or other

19   means); (7) current and former owners of a Class Vehicle who previously have released their

20   claims against BMW NA with respect to the issues raised in the Litigation; (8) United States and

21   Puerto Rico residents who have purchased Class Vehicles in the United States but have since

22   transported the vehicle outside the United States for permanent use abroad; (9) any current or

23   former owner or lessee of a Class Vehicle that has received or obtained a goodwill or warranty

24   payment for Out-Of-Pocket costs(s) (unless the consumer had to pay or share in some portion of

25   the Out-Of-Pocket Cost, in which case the unreimbursed portion of such cost is not excluded);

26   (10) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic

27   partner, or children); (11) individual or entities that have purchased and/or leased Class Vehicles

28   as "fleet" vehicles (i.e. rentals or company vehicles); and (12) Class Vehicles that were involved

9

1  in accidents that resulted in damage to the Comfort Access System or related components." (*Id.*)

2      **2.**    **The Proposed Payment and Reimbursement Schedule**

3      BMW's agrees to pay for "emergency out of pocket costs", meaning costs incurred in

4  connection with a Spontaneous or Unintended Locking in which a child and/or pet was locked

5  inside a Class Vehicle, up to a maximum of $650.00, consisting of $150 maximum reimbursement

6  for "non-emergency" out of pocket costs, and up to $500 for "emergency out of pocket costs."  In

7  Spontaneous or Unintended Lockout situations,  BMW agrees to pay for "non-emergency" out of

8  pocket costs, up to a maximum reimbursement limit of $150.00. (Agreement, § I, ¶¶ 21, 26, 27

9  and § III).)

10      Emergency out of pocket costs include the costs to repair a broken window, or other

11  damage, arising out of the effort to unlock a Class Vehicle, as well as other related costs such as

12  towing, or rental vehicle costs. (*Id.*, § I, ¶¶ 21, 26, and 27.) And non-emergency costs include

13  obtaining the cost of a locksmith or other similar services, as well as towing and rental costs. (*Id.*;

14  Harris Declaration, ¶ 10.)

15      **3.**    **The Proposed Owners' Manual Insert**

16      The Settlement requires that the Class Notice include an  owner's manual insert (Exhibit 4)

17  that provides additional information and warnings regarding patenting locking of Class Vehicle

18  doors using the Comfort Access System. This is a vital part of the Settlement, notifying Class

19  Members of the lock-out concern order to avert potential harm to children and other vulnerable

20  individuals. (*Id.*, § I, ¶ 31, § III, A; Harris Declaration, ¶18, and Exhibit 4.)

21

22      **4.**    **The Proposed Notice to the Class and Others of the Settlement**

23      A Settlement Administrator is to be appointed under the Agreement who will disseminate

24  notice of the Settlement (and an Owners' Manual Insert) and the hearing on a Final Approval

25  Motion (see, Exhibits 2, 4 of the Harris Declaration; Agreement §I, ¶¶ 14, 28, 31;§ V). Notice will

26  be sent by First-Class U.S. Mail, postage paid, to potential Settlement Class members, including

27  current and prior owners and lessees of Class Vehicles. The procedure for giving notice to

28  potential Settlement Class members is set forth in Section I, Paragraph 28 and Section IV,

1   paragraphs A-E, of the Agreement. In addition to mail notice, the settlement administrator will

2   maintain a toll free number and web site dedicated to advising Class Members about the

3   Settlement. (*Id.*)

4         Class members will have 90 days to submit a claim from the date of transmission of the

5   notice, and can do so via mail, email, or facsimile. (Agreement, § I, ¶¶ 9, 28; §§ IV-V; Ex.'s 2-4 to

6   Harris Declaration.) Class members can also appeal denial of their claims, or cure deficient claims.

7   (Agreement, § V, ¶¶ D, F-G.)

8         The Settlement Agreement, at Section VI, establishes the procedure for those potential

9   Settlement Class members who wish to be excluded from the settlement; Section VII establishes

10  the procedure for those potential Settlement Class members who wish to object to the settlement.

11        **5.**    **The Proposed Release of the Class**

12        Class Members who do not opt out of the Settlement according to the procedures set forth

13  in the Settlement Agreement shall release any and all claims (including unknown claims) or causes

14  of action that were, or could have been, asserted by Plaintiff or any Class Members against BMW,

15  regarding spontaneous or inadvertent locking of the doors due to the Comfort Access System in

16  Class Vehicles as alleged in the Action (excluding potential claims for personal injury, or claims

17  for subrogation). (Agreement, § VIII.)

18        **6.**    **Attorneys' Fees, Costs and Enhancements**

19        The Agreement contains provisions relating to class counsel's attorneys' fees and costs, as

20  well as the recommended enhancement payment. (*Id.*, § IX.)

21                                  **III.**

22                          **ARGUMENT**

23  **A.**    *The Proposed Class Action Settlement Should Receive Preliminary Approval*

24        **1.**    **Overview of the Class Action Settlement Process and the Role of Preliminary**

25               **Approval**

26        A class action settlement like the one proposed here must be approved by the Court to be

27  effective. *See* Fed. R. Civ. Proc. 23(e).  Court approval occurs in three steps: (1) a preliminary

28  approval hearing, at which the court considers whether the proposed settlement is within the range

11

1    of reasonableness meriting final approval; (2) a notice and comment stage, during which class

2    members are informed about the proposed settlement and given an opportunity to object; and (3) a

3    "formal fairness hearing," or final approval hearing, at which the court decides whether the

4    proposed settlement should be approved as fair, adequate, and reasonable to the class. (*See*

5    Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).)

6        Whereas at the final approval stage the Court must decide whether the parties negotiated a

7    settlement that is fair, reasonable, and adequate to class members, at the preliminary approval

8    stage, the Court need only decide whether the settlement falls within a range of reasonableness

9    possibly meriting final approval (i.e., whether it would be worthwhile to give the class notice of

10   the settlement and proceed with a formal fairness hearing). (*See Gautreaux v. Pierce*, 690 F.2d

11   616, 621 n.3 (7th Cir. 1982); *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To

12   determine whether preliminary approval is appropriate, the settlement need only be potentially

13   fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval,

14   after such time as any party has had a chance to object and/or opt out."); 4 Newberg & Conte, §

15   11.25.) If the settlement has no obvious deficiencies, then it falls within the range of possible

16   approval. (*See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).) In

17   other words, the Court makes only a preliminary determination of the settlement's fairness,

18   reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the

19   outset that a formal fairness hearing would be a waste of time. (*See* Manual for Complex

20   Litigation, § 21.632; 4 Newberg & Conte, § 11.25.)

21       Plaintiff asks the Court to take the first step in the settlement approval process and grant

22   preliminary approval of the Settlement. Plaintiff further requests that the Court provisionally

23   certify the Settlement Class, appoint Plaintiff as Class Representative and her attorneys as Class

24   Counsel, order dissemination of notice to Class Members, and set a date for the final approval

25   hearing.

26

27

28

**2.      The Proposed Settlement Is Well Within the Range of Reasonableness
          Warranting Preliminary Approval and Justified in Light of the Risks of
          Continued Litigation**

The settlement presented by the parties contains no obvious deficiencies and does not provide for excessive attorneys' fees at the expense of the class. Indeed, as its terms were negotiated at arm's length by experienced counsel[1] knowledgeable in complex class litigation, the settlement enjoys a presumption of fairness. (*See*, e.g., *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-174 (S.D.N.Y. 2000). "Once the Settlement is presumed fair, it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *Id.* (internal quotes omitted).)

An objective evaluation confirms that the benefits negotiated for the class are well within the range of reasonableness. It follows that the class is now receiving, through a settlement, nearly as much as could reasonably be expected after a successful trial verdict. The alternative would be protracted litigation that would leave class members uncompensated, and many completely unaware that their vehicles suffer from a Comfort Access Defect, a problem which poses a risk to children or pets of being locked in the vehicle and potentially suffering serious injury or death.

If the parties had been unable to resolve this case through settlement, the litigation could have been even more expensive and lengthy. For instance, in a case against General Motors alleging a defect in an intake manifold gasket, another plaintiffs' counsel devoted more than 58,000 hours over five years before resolving the cases for cash reimbursements through a claims-made process. (*In Re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda County 2008).)

The reality is that any case against a major automotive manufacturer alleging a defect in thousands of vehicles has the potential to take up significant amounts of the Court's and the parties' resources. In addition, if the case were to proceed, Plaintiff would need to retain multiple

---

[1] See, Harris Declaration, ¶¶ 17-20.

1   experts resulting in significant additional expenses.

2        It goes without saying that BMW would strongly oppose class certification were the case
3   to proceed on the merits. "The value of a class action 'depends largely on the certification of the
4   class,' and . . . class certification undeniably represents a serious risk for plaintiffs in any class
5   action lawsuit." (*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) (quoting *In*
6   *re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d. Cir. 1995).) As
7   explained herein, Plaintiff's counsel believe that this case is appropriate for class certification in
8   the litigation context. However, there is always a risk that a Court would not find this action
9   suitable for certification as a nationwide class or a multi-state class, or, even if class certification
10   were granted in the litigation context, class certification can always be reviewed or modified
11   before trial, and a class may be decertified at any time. (*See*, e.g., *Mazza v. American Honda*
12   *Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (the Ninth Circuit reversed the certification of a
13   nationwide class composed of consumers seeking relief under California's consumer protection
14   laws); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).)

15        Moreover, *Mazza* is distinguishable where, as here, the class suffers from an "informational
16   injury, "meaning "a common policy of non-disclosure" by the defendant. (*Torres v. Mercer*
17   *Canyons Inc.*, 835 F.3d 1125, 1134-1135 (9th Cir. 2016).) The outcome in *Mazza* was due to the
18   defendant having "subjected only a small segment of an expansive class of car buyers to
19   misleading material as part of a 'very limited' advertising campaign." (*Id.* at 1137 (quoting Mazza,
20   666 F.3d at 595).) But where there exists "a common failure to disclose information, and not
21   merely a disparate series of affirmative statements," predominance is easily established. (*Id.* at
22   1137–38; accord *In re First All. Mortg. Co.*, 471 F.3d 977, 985, 990–91 (9th Cir. 2006) (affirming
23   consumer class certification under California law based on defendants' omissions and
24   misrepresentations communicated through various loan officers).[2])

25

26       [2] This analysis also serves to distinguish the recent decision of *In re Hyundai and Kia Fuel*
27   *Economy Litigation* (9th Cir., Jan. 23, 2018, No. 15-56014) 2018 WL 505343.

28

1  Given the favorable terms of the settlement and the manner in which these terms were

2  negotiated, the proposed settlement should be viewed, at least preliminarily, as a fair, reasonable,

3  and adequate compromise of the issues in dispute. It is worthwhile for the Court to grant

4  preliminary approval to the settlement, order dissemination of notice to the class for comment, and

5  proceed to a formal fairness hearing.

6  **B.    Conditional Class Certification Is Appropriate for Settlement Purposes**

7  **1.    The Proposed Class Meets the Requirements of Rule 23**

8  Before granting preliminary approval of the Settlement, the Court should determine that

9  the proposed settlement class meets the requirements of Rule 23. (*See Amchem Prods. v. Windsor*,

10  521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.) An analysis of the

11  requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality,

12  typicality, adequacy, predominance, and superiority, shows that certification of this proposed

13  settlement class is appropriate.

14  **2.    The Proposed Class Is Sufficiently Numerous and Ascertainable**

15  The numerosity requirement is met where "the class is so numerous that joinder of all

16  members is impracticable." (Fed. R. Civ. P. 23(a) (1).) Generally, courts will find a class

17  sufficiently numerous if it consists of 40 or more members. (*Vasquez v. Coast Valley Roofing,*

18  *Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40

19  members); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)

20  ("numerosity is presumed at a level of 40 members"); *Swanson v. American Consumer Industries,*

21  415 F.2d 1326, 1333 (7th Cir. 1969) (numerosity satisfied with class of 40 individuals); *Ikonen v.*

22  *Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (finding a purported class of 40

23  members sufficient to satisfy numerosity).)

24  Here, the proposed settlement class consists of all 219,233 current and former owners and

25  lessees of Class Vehicles within the United States (including Puerto Rico).

26  **3.    There are Questions of Law and Fact that Are Common to the Class**

27  The second Rule 23(a) requirement is commonality, which is satisfied "if there are

28  questions of law or fact common to the class." (Fed. R. Civ. P. 23(a) (2).) The "commonality

15

1   requirement has been 'construed permissively,' and its requirements deemed minimal.'" (*Estrella*
2   *v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v.*
3   *Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998).) Moreover, "'there is clear
4   justification for handling the dispute on a representative rather than an individual basis' if
5   'common questions present a significant aspect of the case and they can be resolved for all
6   members of the class in a single adjudication....'" (*Mazza*, 666 F.3d at 589 (quoting *Hanlon*, 150
7   F.3d at 1022).)

8       Here, each Class Member purchased or leased class vehicles. BMW concedes that it is
9   possible for the key in a vehicle with Comfort Access to be locked inside the Class Vehicles. It
10  follows that the principal common questions of law and fact which a trier of fact would need to
11  resolve are whether the Comfort Access System is defective, and if so, whether BMW had an
12  obligation to apprise consumers of the defect and make repairs relating to the defect at no cost to
13  the consumer. The need to determine whether an inherent defect exists not only satisfies Rule 23's
14  commonality requirement, it raises the very type of overarching common question that has driven
15  class certifications in other automotive defect cases. (*See*, e.g., *Hanlon*, 150 F.3d at 1020
16  (allegedly defective rear liftgate latches); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-
17  97 (C.D. Cal. 2008) (allegedly defective flywheels); *Chamberlan v. Ford Motor Co.*, 223 F.R.D.
18  524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds); *Daffin v. Ford Motor*
19  *Co.*, 458 F.3d 549, 552 (6th Cir. Ohio 2006) (allegedly defective throttle body assembly); *see also*
20  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (reversing denial of
21  class certification in a case regarding allegedly defective tire alignment).)

22          **4.      Plaintiff's Claims are Typical of the Proposed Settlement Class**

23      "Like the commonality requirement, the typicality requirement is 'permissive' and requires
24  only that the representative's claims are 'reasonably co-extensive with those of absent class
25  members; they need not be substantially identical.'" (*Rodriguez v. Hayes*, 591 F.3d 1105, 1124
26  (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).) "In determining whether typicality is met,
27  the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to
28  the plaintiff." (*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).) Thus,

16

1  typicality is "satisfied when each class member's claim arises from the same course of events, and
2  each class member makes similar legal arguments to prove the defendant's liability." (*Armstrong*
3  *v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd
4  Cir. 1997)).)

5       Here, Plaintiff asserts that Class Members' claims arising from the Comfort Access System
6  are reasonably coextensive with the legal claims asserted by the named Plaintiff. Each Class
7  Member's claim arises from the same underlying conduct-namely, BMW's alleged concealment of
8  an inherent defect in the Comfort Access System in the  219,233 X-5 Class Vehicles. In addition,
9  Class Members have similar interests in the remedies being provided by the proposed settlement,
10  which include an owners' manual insert warning them of the existence of the defect, and
11  reimbursements for out of pocket costs incurred in connection with incidents involving
12  Spontaneous or Unintended Locking.

13       **5.**    **Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the**
14           **Proposed Settlement Class**

15       The final Rule 23(a) requirement asks whether "the representative parties will fairly and
16  adequately protect the interests of the class." (Fed. R. Civ. P. 23(a) (4).)  This requirement is
17  satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the
18  proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. (*Hanlon*,
19  150 F.3d at 1020.)

20       Here, the proposed representative Plaintiff does not have individual interests in this
21  litigation that conflict with the best interests of the class. To the contrary, Myers and each Class
22  Member have a common interest in receiving notice from BMW and obtaining reimbursement
23  from BMW as a result of its alleged concealment of the Comfort Access Defect. In addition, the
24  named Plaintiff is represented by counsel well versed in prosecuting automotive class actions, and
25  other class actions.

26       While the Court usually must speculate to some extent in assessing whether the named
27  plaintiff and her counsel will adequately represent the class, in this case the Court can look to the
28  proposed settlement negotiated by Plaintiff and her counsel. The settlement provides fair

1  compensation for Class Members' claims by providing them with reimbursement for repairs to

2  their Class Vehicles relating to Spontaneous or Unintended Locking events. And the Settlement

3  also warns all class members of the problem, in an effort to prevent future harm or death posed by

4  young children or pets being locked inside Class Vehicles.

5          **6.   Common Issues Predominate Over Individual Issues**

6          "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

7  certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b) (1), (2) or

8  (3)." (*Hanlon*, 150 F.3d at 1022.) Here, the proposed class is maintainable under Rule 23(b) (3),

9  as common questions predominate over any questions affecting only individual members and class

10  resolution is superior to other available methods for a fair resolution of the controversy. (*Id.*

11  (citing Fed. R. Civ. P. 23(b) (3)).)

12          Each class members' claim depends on whether his/her/its Class Vehicle suffers from an

13  inherent Comfort Access Defect, and thus these claims raise just the sort of predominantly

14  common questions courts have found to justify class treatment. (*See*, e.g., *Hanlon*, 150 F.3d at

15  1022-1023 (allegedly defective rear lift gate latches); *Chamberlan*, 223 F.R.D. at 526 (allegedly

16  defective engine intake manifolds); *Daffin*, 458 F.3d at 552 (allegedly defective throttle body

17  assembly).) Moreover, proof of the manifestation of the defect is not a prerequisite to class

18  certification. (*Wolin*, 617 F.3d at 1173.)

19          Preliminary approval is not precluded by *Mazza*, where after analyzing governmental

20  interests, the court denied certification "[u]nder the facts and circumstances of [the] case," holding

21  "that each class member's consumer protection claim should be governed by the consumer

22  protection laws of the jurisdiction in which the transaction took place." (*Mazza*, 666 F.3d at 594.)

23  In *Mazza*, plaintiffs' claims against a vehicle manufacturer were for false advertising. "Thus,

24  Mazza stands for the unremarkable proposition that it is difficult to certify a class where the class

25  members are not all exposed to the same representations. This proposition has no relevance to [a]

26  case, where Plaintiffs' theory is that Defendant's *omissions* violated the [states' consumer statutes]

27  and that partial representations *on the product itself* are misleading." (*Tait v. BSH Home*

28  *Appliances Corp.*, SA CV 10-0711 DOC, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) (Emphasis

18

1  in original); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134-1135, 1137-1138 (9th Cir.

2  2016).[3]) Here too, Plaintiff's theory (set forth in the proposed amended complaint) is that BMW's

3  failure to disclose the existence of the Water Pump Defect violated unfair and deceptive acts and

4  practice laws of each state. In addition, the claims for breaches of express warranty and implied

5  warranty of merchantability are based upon the same facts pertaining to each Class Member.

6  Importantly, with respect to the claims occurring within warranty, Class Members will not need to

7  show that any particular warranty was delivered or made to them by BMW in order to be

8  reimbursed under the Settlement Agreement. They need merely show proof of a covered locking

9  event resulting in out of pocket costs for repair and replacement.

10            **7.    Class Settlement Is Superior to Other Available Means of Resolution**

11            Similarly, there can be little doubt that resolving all Class Members' claims through a

12  single class action is superior to a series of individual lawsuits. "From either a judicial or litigant

13  viewpoint, there is no advantage in individual members controlling the prosecution of separate

14  actions.  There would be less litigation or settlement leverage, significantly reduced resources and

15  no greater prospect for recovery." (*Hanlon*, 150 F.3d at 1023.) Indeed, the terms of the Settlement

16  negotiated on behalf of the class demonstrates the advantages of a collective bargaining and

17  resolution process.

18            Addressing the allegations of an inherent defect in the design of the Class Vehicles'

19  Comfort Access Systems through a class action is superior to individual litigation or any

20  alternative methods that may exist. This action was filed precisely because Plaintiff believed those

21  alternatives, such as filing complaints with NHTSA or directly with BMW, would have proven

22  ineffective in addressing the problem on a class-wide basis. (See *Wolin*, 617 F.3d at 1175 ("Where

23  recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis,

24

25  [3] This analysis also serves to distinguish the recent decision of *In re Hyundai and Kia Fuel*

26  *Economy Litigation* (9th Cir., Jan. 23, 2018, No. 15-56014) 2018 WL 505343.

27

28

1    this [superiority] factor weighs in favor of class certification.").) As the Ninth Circuit found in the

2    *Wolin* automotive defect case, "[f]orcing individual vehicle owners to litigate their cases,

3    particularly where common issues predominate for the proposed class, [would be] an inferior

4    method of adjudication." (*Id.* at 1176.) "There would be less litigation or settlement leverage,

5    significantly reduced resources and no greater prospect for recovery." (*Hanlon*, 150 F.3d at 1023.)

6    The superiority of proceeding through the class action mechanism, on the other hand, is

7    demonstrable. By aggregating Class Members' claims, Plaintiff's counsel have been able to

8    expend the resources necessary to conduct discovery of the alleged Comfort Access Defect and

9    negotiate a settlement with BMW that, if approved, will provide Class Members with

10   reimbursements for their repair costs, and clear notice of the problem, which will have an

11   incalculable benefit of ensuring that future deaths or harm are avoided. As the class action device

12   provides the superior means to effectively and efficiently resolve this controversy, and as the other

13   requirements of Rule 23 are each satisfied, certification of the settlement class proposed by the

14   parties is appropriate.

15   *C.    The Proposed Notice Plan Meets the Requirements of Rule 23*

16         Upon certifying a 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class

17   members the best notice that is practicable under the circumstances, including individual notice to

18   all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires

19   that before a proposed settlement may be approved, the Court "must direct notice in a reasonable

20   manner to all class members who would be bound by the proposal."

21         The parties have agreed on a notice plan that satisfies the requirements of Rule 23. Under

22   this plan, BMW will cause to be mailed notice of class certification and the proposed settlement to

23   all current and former owners and lessees of class vehicles who can be reasonably identified.[4] The

24   form of the notice to be mailed, attached as Exhibit 2 to the Harris Declaration, includes all the

25   _____

26   [4] Moreover, the Agreement also provides for a web site and toll free number to be maintained in
     order to notify the Class Members about the Settlement, and to answer questions that they may
27   have.

28

1 | content required by Rule 23(c) (2) (B), such as a description of the action and class claims, as well

2 | as the Class Members' right to opt out or object to the proposed settlement, including any

3 | application for attorneys' fees, costs and service awards.

4

**IV. CONCLUSION**

5 |     The Parties have negotiated a fair and reasonable settlement that almost certainly never

6 | would have been arrived at but for the use of a class action as a procedural device, a dedicated and

7 | informed Class Representative and experienced Plaintiff's counsel. Preliminary Approval should

8 | thus be granted.

9

10 | DATED: February 9, 2018                THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.

11

12 |                           By:        /s/ Stephen M. Harris

13 |                                  Stephen M. Harris
                                 Attorneys for Plaintiff Kieva Myers

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28