Robert L. Starr, Bar No. 183052
robert@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23901 Calabasas Road, Suite 2072
Calabasas, California 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Stephen M. Harris, Nar No. 110626
stephen@smh-legal.com
THE LAW OFFICE OF STEPHEN M. HARRIS, APC
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone: (818) 924-3103
Facsimile: (818) 924-3079

Attorneys for Plaintiff
KIEVA MYERS, individually, and on behalf of a class
of similarly situated individuals

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| KIEVA MYERS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendants. | CASE NO. 3:16-CV-00412-WHO<br><br>Assigned for All Purposes to the Honorable William H. Orrick<br><br>Date:    3-27-19<br>Time:    2:00 p.m.<br>Courtroom: 2<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT; MEMORANDUM OF POINTS AND AUTHORITES** |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 27, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the above-entitled Court, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Kieva Myers ("Plaintiff" or "Myers") will and hereby does move this Court for entry of an order awarding attorneys' fees, costs, and the class representative incentive award. Plaintiff brings this motion pursuant to Rule 23(h) of the Federal Rules of Civil Procedure on the grounds that the parties' Settlement Agreement authorizes the award, which is also warranted under, inter alia, the Consumers Legal Remedies Act, Civil Code section 1780(e), and the Private Attorney General Statute, California Code of Civil Procedure Section 1021.5.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the attached Memorandum of Points and Authorities; (3) the Declaration of Stephen M. Harris; (4) the Declaration of Robert L. Starr, (5) the Declaration of Plaintiff; (6) the separately filed Motion for Final Approval, as well as the declarations and other evidence filed in support thereof, to be filed after the filing of this Motion; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement, to be submitted after the filing of this motion; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion:

DATED: February 8, 2019

                                            THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.

                                            By:      /s/ Stephen M. Harris
                                                         Stephen M. Harris
                                                        Attorneys for Plaintiff Kieva Myers

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff now moves for approval of her attorneys' fees and costs (in the amount of $692,000.00) and for a class representative award for Plaintiff of $5,000.00, which were items negotiated separately only after all other aspects of the Settlement were agreed to by the parties. The parties ultimately agreed that, subject to Court approval, Defendant would pay attorneys' fees, expenses, and costs of up to $692,000.00. (See Agreement, § IX.)

The Court's function under Rule 23(h) is to ensure that the parties' agreement on fees and expenses is reasonable and does not reflect a collusive settlement that places the interests of counsel above the interests of the Class. Here, the parties carefully separated their negotiations for class recovery from their negotiation for attorneys' fees and expenses so there is no possibility of collusion. Moreover, the maximum amount Plaintiff can request under the Agreement is reasonable under California's lodestar/multiplier approach to calculating an appropriate fee award. Indeed, as established herein, when the costs of Plaintiff's counsel are subtracted from the sum of $692,000, counsel will receive a negative multiplier for their services. The negative multiplier will increase due to the future services which counsel for Plaintiff will necessarily provide after final approval.

The modest enhancement of $5,000.00 for Plaintiff is also reasonable and an appropriate reward for her services in this case.

**II. FACTS AND PROCEDURE**

The detailed factual and procedural background of this case is set forth in Plaintiff's separately filed motion for final approval of the class action settlement, and is thus not reiterated here.

## III. ARGUMENT

### A. As The Requested Fee Is The Product Of Arm's-Length Negotiations And Will Not Reduce The Benefits To The Class, It Is Entitled To A Presumption Of Reasonableness

The requested fee was negotiated at arm's length by counsel experienced in the prosecution and resolution of complex, consumer class action litigation. Counsel for both sides aggressively litigated this case, and were thus in an ideal position to assess the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award were the parties to litigate the issue of attorneys' fees. These fee negotiations commenced only after the parties had settled on the relief for the class. (Harris Declaration, submitted in support of this application, ¶¶ 3-4.) Accordingly, there is no risk that the fee agreement was obtained through improper compromise of the underlying claims of the absent class members. (*Hoirup v. Prof'l Eng'rs in Cal. Gov't*, 2006 U.S. Dist. LEXIS 73814, at *9 (E.D. Cal. 2006).)

Unlike in common-fund settlements, where defendants aim to minimize the total amount of the fund and have little concern how that fund is allocated between the class and their counsel, the Defendant in this case had a keen interest in negotiating the smallest attorney fees it would have to pay. Defendant had already committed to provide certain relief to class members, and the fee it agreed to pay to Plaintiff's counsel would only increase its total outlay.[1]

Under these circumstances, the parties' arm's-length, negotiated fee is entitled to a presumption of reasonableness. As stated by *In re First Capital Holdings Corp. Financial Products Securities Litigation*, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. 1992), in awarding a negotiated fee of $8 million, "[t]he fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and

---

[1] See, e.g., *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), and *Calloway v. Cash Am. Net of California LLC*, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011) ("This lack of a common fund obviates the due process concerns highlighted by the Mercury court."); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) ("[U]nlike the class members and attorneys in In re Mercury Interactive, there is no 'adversarial' relationship at the fee setting stage requiring the Court to assume the 'role of fiduciary for the class plaintiffs' because the fee award is not coming from a common fund and will not affect class members' rights.").

value of their time, and the nature of the result obtained for the class." (*Id*. at *13.) "Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation." (*Id*.; *see also Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at **81-82 (N.D. Ala. June 25, 1999) (in awarding $12.2 million negotiated fee, "[t]he Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement.  There is absolutely no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive.  Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request."); *Shames v. Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, at *43-45 (S.D. Cal.Nov. 5, 2012) (holding that such a "clear sailing" provision was not collusive because attorneys' fees were separately negotiated and did not impact the benefits made available to the class).)

Here, the fee was negotiated at arm's length, and thus is presumed to be reasonable.

**B.     *The Fee Award Is Governed By California Law***

At the conclusion of a successful class action, Plaintiff's Counsel may apply to the Court for an award of "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." (Fed. R. Civ. P. 23(h).) Here, fees are provided for by the parties' agreement and are also governed by state law. (*Gezalyan v. BMW of North America*, LLC, 697 F. Supp. 2d 1169 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees."); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995).)

**C.     *Evaluation Of The Fee Request Under California's Lodestar-Multiplier Approach Confirms The Presumption That The Fee Is Reasonable***

Plaintiff seeks attorneys' fees pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code Section 1780(d), and the "private attorney general doctrine," which has been codified at Section 1021.5 of the California Code of Civil Procedure. The CLRA requires a court to award attorneys' fees and costs to a prevailing plaintiff in litigation. Additionally, under

Cal. Code of Civ. Proc. § 1021.5, a court may award attorneys' fees to a successful party in an action resulting in the enforcement of an important right affecting the public interest, such as the enforcement of the CLRA or the California Unfair Competition Law, Business & Professions Code Section 17200 et seq. (claims asserted in this case), if, among other things, a significant benefit has been conferred, pecuniary or nonpecuniary, on the general public or a large class of persons. (*See* Cal. Code of Civ. Proc. § 1021.5.)

California courts follow the lodestar-multiplier method for calculating the attorneys' fee award. *See Serrano v. Priest ("Serrano II")*, 20 Cal. 3d 25, 48-49 (1977).[2] Under this approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." (*Lealao v. Beneficial California*, 82 Cal.App.4th 19, 26 (2000).) "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." (*Id.* at 26; *see also Serrano III*, 20 Cal. 3d at 48-49; *Ramos v. Countrywide Home Loans*, Inc., 82 Cal.App.4th 615, 622 (2000).)

Class Counsel is entitled to recover fees for all hours reasonably spent working on the case. (*Vo v. Las Virgines Mun. Water Dist.*, 79 Cal.App.4th, 440, 446 (2000) ("Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render the award unjust. "); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) ("an attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against even the most polemic opponent.").)

A lodestar calculation need not be supported by detailed time records. (*See Wershba v. Apple Computers Inc.*, 91 Cal.App.4th 224, 255 (6th Dist. 2001) ("California case law permits fee awards in the absence of detailed time sheets").) Declarations by counsel as to time spent, even if

---

[2] However, in common fund cases, unlike ours, the California Supreme Court has endorsed a fee award based on a percentage of the common fund. (*Laffitte v. Robert Half Intern. Inc.*, 1 Cal. 5th 480, 503-504 (2016).)

only estimates, are enough. (*See id*. ("Here plaintiffs' attorneys submitted declarations evidencing the reasonable hourly rate for their services and establishing the number of hours spent working on the case"); *see also Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1810 (1996) (stating that lodestar calculation could be based on counsel's estimate of time spent).) "An experienced trial judge is in a position to assess the value of the professional services rendered in his or her court." (*Wershba*, 91 Cal.App.4th at 255.)

Plaintiff's counsel seeks compensation for its present lodestar of $694,840.00, as well for the value of the time that will be spent in the future ($50,000.00 to $100,00.00) for a total lodestar of up to $794,840.00.  (Harris Declaration, submitted in support of this application at ¶¶ 5-7; Starr Declaration, submitted in support of this application at ¶¶ 3-4.) Moreover, Class Counsel has incurred costs of $42,354.88, which are to be deducted from the fee award.[3] Thus, after deduction of costs, the sum of $692,000 represents a negative multiplier.

As described in detail in the papers to be filed in support of the motion for final approval, Plaintiff's counsel spent significant time and effort in prosecuting the claims against Defendant. These efforts included:

- Drafting of the Complaints;
- Legal Research;
- Responding to Motions to dismiss;
- Discovery, including depositions in New Jersey;
- Participation in settlement negotiations and drafting settlement agreement, notice, and claim form;
- Preparing the Preliminary and Final Approval Motion, and Fee Application, as well as supplemental papers requested by the court;

---

[3] Attorneys in a class action may be reimbursed for costs incurred "in the ordinary course of prosecuting [a] case" in addition to attorneys' fees incurred. (See *X-Ray Film Antitrust Litig.*, 1998 WL 1031494 at *11 (Oct. 22, 1998) (awarding class counsel $29,051.40 in costs and expenses); *see also In re Businessland Sec. Litig.*, 1991 WL 427887 at *3 (N.D. Cal. June 14, 1991) (awarding class counsel $90,574.78 in costs and expenses in addition to attorneys' fees).)

- Preparation of supplemental briefing relating to the *In Re. Hyundai* decision, and research regarding this decision and its impact on this case;
- Consulting expert witnesses, including an expert who assessed the multiple ways in which the Comfort Access System could result in the keys being locked inside the vehicle;
- Inspection of Plaintiff's vehicle;
- Review of publicly available information;
- Review of on-line complaints and NHTSA complaints, review of lawsuits filed in Southern California relating to this problem, and review of literature about the dangers posed to children locked in parked cars;
- Obtaining and reviewing approximately 3,500 pages of documents produced by BMW in response to Plaintiff's formal discovery requests, including warranty and good will claims data, call center records, and customer complaint records;
- Communications with class members;
- Concerted effort to publicize settlement;
- Hiring and interfacing with a vendor to create a web-site concerning the settlement, and drafting content of site;
- Communications with class members regarding their actual and potential claims and questions;
- Future work consisting of further assistance of class members, including appeal work;
- Communication with defense counsel and claims administrator regarding settlement issues and claims administration.

At the hourly rates charged by Plaintiff's counsel in this case, their lodestar is calculated as $794,840.00. (Harris Declaration, submitted in support of this application at ¶¶ 5-7; Starr Declaration, submitted in support of this application at ¶¶ 3-4.)  Calculating the lodestar using Plaintiff's current rates is appropriate given the deferred nature of counsel's compensation.  (*See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment ....") (*citing*

1  *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec.*
2  *Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay
3  in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed
4  during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime
5  rate enhancement.").)

      Plaintiff's counsel's rates are commensurate with their current, customary rates for non-contingent matters, and consistent with the rates charged by both Plaintiff's[4] and defense firms in Los Angeles, San Francisco, and around the country. (See Harris Declaration, ¶¶ 9-11; Exhibits 1-2 to Harris Declaration.) The relevant market for the billing rates in this case is the area comprising the Central and Northern Districts of California. (E.g., *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993).) Class Counsel's rates are well within those permissible for attorneys practicing in this market. (See Harris Declaration at ¶¶ 9-11; Exhibits 1-2 to Harris Declaration.) In determining what constitutes a reasonable rate, courts have often reviewed the National Law Journal's survey of billing rates. (See, e.g., *Orde Ridgeway v. Wal-Mart Stores Inc.*, 269 F.Supp.3d 975, 985 (N.D. Cal. 2017) (discussing cases approving hourly rates of $800.00 for attorneys admitted in 1996, $875.00 for attorneys admitted for 22 years, $895.00 for attorneys admitted in 1985, and rates for partners in the range of $490.00 to $950.00); *Minor v. Christie's, Inc.*, 2011 WL 902235, at **7-8 (N.D. Cal. 2011) (approving partner rates of $700 and $600 an hour).)

      The National Law Journal Survey and other evidence establishes that rates charged by other firms in California are either commensurate with, or even exceed, those charged by Class Counsel. Given the foregoing, ample evidence exists establishing that Class Counsel's rates are reasonable for the market area comprising the Central and Northern Districts of California. Accordingly, Plaintiff's counsels' lodestar is reasonable and should be approved.

---

[4] The hourly fees charged by Plaintiff's counsel are commensurate with fees approved for other class action firms practicing in California. (*See* Harris Declaration, ¶¶ 9-11.)

1  **D.      *Factors Used To Consider Upward Multiplier Justify The Fee In This Case***

2          It has been established that the $692,000 fee represents a negative multiplier in the
3  circumstances of this case. However, California law permits fee enhancements under state statutes
4  authorizing an award of attorneys' fees to the prevailing party. (*See Serrano*, 20 Cal. 3d at 49;
5  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001).) Considerations of the factors the courts rely
6  upon also establish the fee award here is justified.

7          In deciding whether to apply a multiplier, the Court may consider a variety of factors,
8  including "(1) the novelty and difficulty of the questions involved, and the skill displayed in
9  presenting them; (2) the extent to which the nature of the litigation precluded other employment
10 by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of
11 eventual victory on the merits and the point of view of establishing eligibility for an award."
12 (*Serrano*, 20 Cal. 3d at 49.) A court may also augment the lodestar based on the result achieved by
13 counsel. (*See Lealao*, 82 Cal.App.4th at 26 (listing "results obtained" as a factor courts can
14 consider in setting multiplier).[5])

15         The above list of factors is neither mandatory nor exclusive.  "[N]either in *Serrano* nor in
16 any other opinion has our Supreme Court carved the factors used in that case into concrete or
17 barred consideration of other relevant and non-duplicative factors; nor have the courts of appeal
18 sought to do so." (*Lealao*, 82 Cal. App. 4th at 40 (footnotes omitted).  "[T]here is 'no mechanical
19 formula [that] dictate[s] how the [trial] court should evaluate these factors. Instead it ha[s] wide
20 latitude in assessing the value of the attorney's services, and its decision [is] not to be disturbed on
21 appeal absent a manifest abuse of discretion.'" (*Id*. at 41 (quoting *Flannery v. California Highway
22 Patrol*, 61 Cal.App.4th 629,639 (1998)).)

---

26 [5] See, e.g., *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009) which cited the
following factors: (1) The risks presented by the litigation; (2) The novelty and difficulty of the
27 questions involved; (3) The results obtained on behalf of the class; (4) The skill exhibited by
counsel;(5) The continuing obligation to devote time and effort to the litigation; and (6) The extent
28 to which the litigation precluded other employment by attorneys.

1.      **Plaintiff's Counsel Conferred A Significant Benefit On A Large Class Of Persons.**

Plaintiff's counsel negotiated a favorable settlement that confers significant benefits on a large number of people while addressing an issue of societal importance - defective automobiles. (*See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553,578 (2004).) Current or former owners of some 219,233 Class Vehicles are potentially affected by the settlement.

Although the issue of whether the Comfort Access Defect (claimed to exist by Plaintiff) constitutes a safety defect has been hotly disputed, Defendant has notified consumers of this problem and has agreed to pay for costs associated with consumers being locked out of their vehicles.

Further, as more fully discussed in Plaintiff's motion for final approval, class members have reacted positively to the settlement. Class Members thus have recognized the value of the benefit this settlement provides them. In short, the settlement negotiated by Plaintiff's counsel provides the entire class virtually all the relief that any court could award. By achieving this result sooner rather than later, the settlement has not only avoided the risk and expense of trial, it prevented further harm to class members by promptly providing them notice of the issue and an opportunity to obtain reimbursement. Had the litigation continued through trial and the appellate process, class members might not have received relief for years, if at all.

2.      **Class Counsel Displayed Skill In Representing Plaintiff's Claims and In Negotiating the Settlement.**

Class Counsel displayed skill in achieving an excellent result without requiring the Court to spend its time deciding either a class certification motion or the final merits of the case. The California Court of Appeal has held that the promptness of settlement cannot be used to justify a refusal to apply a multiplier "without exacerbating the disincentive to settlement promptly inherent in the lodestar methodology." (*Lealao*, 82 Cal.App.4th 19 at 52.) "Considering that our Supreme Court has placed an extraordinarily high value on settlement ... it would seem counsel should be rewarded, not punished, for helping achieve that goal, as in federal courts." (*Id*.)

### 3. Class Counsel Bore Considerable Risk and Forewent Employment Opportunities.

Plaintiff's counsel bore the risk of investigating and prosecuting this case, thereby giving up more secure employment opportunities. Under California law, contingent risks and foregone employment opportunities can justify multiplying the lodestar fee. (*Serrano*, 20 Cal. 3d at 49.) A contingent fee should exceed a non-contingent fee because "[i]n addition to compensation for the legal services rendered, there is the raison d'etre for the contingent fee: the contingency. The lawyer on a contingent fee contract receives nothing unless the plaintiff obtains a recovery." (*Cazares v. Saenz*, 208 Cal.App.3d 279, 288 (1989).) "Thus, in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingency fee for the same case." (*Id*.) These cases implement a well-understood economic principle: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (Leubsdorf, *The Contingency Factor In Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981).)

Here, the risks in automobile defect litigation establish the risk counsel faced in this case. (See, e.g., *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) (affirming judgment of dismissal on demurrer); *In Re General Motors Dex-Cool Products Liability Litigation*, 241 F.R.D. 305 (S.D. Ill. 2007) (nationwide class certification denied in a case involving defective intake manifold gaskets; class counsel ultimately achieved a nationwide settlement after spending 58,500 hours and $1.55 million in litigation costs to certify state classes in three state courts and prepare those cases for trial); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (nationwide class certification denied in Ford Explorer roll-over litigation, which ultimately settled for coupons after 7 years of litigation, including a 50-day bench trial in California state court); *Edwards v. Ford Motor Co.*, 2012 WL 2866424 (S.D. Cal. June 12,

2012) (certification denied under California law in automobile defect case).[6])

In this case, Plaintiff faced considerable risk in her attempt to obtain relief for all affected consumers. There was no government recall or notice by defendant that preceded the case, and the warranties on many of the vehicles had already expired. Thus, Plaintiff bore the risk that the lawsuit would not succeed, but continued with the pre-and post-litigation investigation and convinced BMW that it would not be able to extract itself from the litigation. Moreover, Plaintiff bore the risk that the contemplated class certification motion would not have been successful, or that Defendant would succeed on its other defenses, such as the absence of a safety defect, or the statute of limitations.

### E. Multipliers Awarded By Both California And Federal Courts Demonstrate That The Fee Is Reasonable

In many cases, a positive multiplier is granted when a court awards fees. (See *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009) (affirming a 1.75 multiplier); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (affirming multiplier of 2.50); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *Craft v. County of San Bernardino*, 2008 US. Dist. LEXIS 27526 (C.D. Cal. Apr. 1, 2008) (applying 5.2 multiplier).)

Accordingly, here the fee award is reasonable since the court need not even consider enhancing it with a multiplier.

### F. The Additional Work Required Of Class Counsel Will Also Operate As A Negative Multiplier

The requested fee assumes Class Counsel will continue work on the claims process, addressing class members concerns, contesting notices of rejection and handling appeals of any

---

[6] See, also, *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (Penn. Dec. 2, 2011) (nearly 12 years after the commencement of the action—following, among other things, a contested motion for class certification, trial, post-trial motions, and appeal to the Superior Court—the Supreme Court of Pennsylvania affirmed an award of $600 to each class member which was based on the class vehicle having a useful life of 100,000 miles).

adverse determinations by BMW. Moreover, this fee application is filed before preparation of all papers to be prepared in connection with the motion for final approval, and Plaintiff will have to respond to objections and appear at the final approval hearing. This additional work required of Class Counsel will effectively ensure that Class Counsel's fee will represent a negative multiplier (along with the deduction of costs) and provides further justification for the award of the fee sought.

**G.     The Incentive Award To The Class Representative Is Appropriate**

In addition to awarding Class Counsel the requested fees and expenses, the Court should also approve a $5,000 incentive award for plaintiff. In *Van Vraken v. Atlantic Richfield Co*., 901 F. Supp. 294 (ND. Cal. 1995) the court stated that in deciding whether to make an incentive award, courts may consider criteria such as "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." (*Id*. at 299.)

Here, Plaintiff voluntarily assumed the responsibilities of bringing and prosecuting the action on behalf of all others similarly situated, and devoted time and effort to keeping herself informed of the litigation. Plaintiff assisted in the investigation of the case, provided Class Counsel with information, regularly communicated with Class Counsel, and was involved in the progress of the litigation. (See, declaration of Plaintiff.)

Plaintiff thus respectfully requests that the Court approve the requested incentive award, which is reasonable in light of Plaintiff's effort and the ultimate relief to the Class. (*See In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (awarding named plaintiff $5,000); *Hopson v. Hanesbrands Inc*., CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at **27-28 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); *Villegas v. J.P. Morgan Chase & Co*., 2012 U.S. Dist. LEXIS 114597, at *18 (N.D. Cal. Aug. 8, 2012) ("[T]he Settlement provides for an incentive award to the Plaintiff in the amount of $10,000. In this District, a $5,000 incentive award is presumptively reasonable.");

*Carter v. Anderson Merchandisers, LP*, EDCV 08-0025-VAP OPX, 2010 U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010) (same).)

### IV. CONCLUSION

The requested attorneys' fees, costs and incentive awards will not reduce the Class' recovery. Rather, these funds will be paid separately by BMW. Moreover, these sums are reasonable and supported by the time spent, the effort of Counsel and the result achieved. For these reasons and those stated above, Plaintiff respectfully requests that the Court grant the application for an award of $692,000 in attorneys' fees and expenses, and $5,000 in incentive awards for Plaintiff's efforts as class representative.

DATED: February 8, 2019

THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.

By:     /s/ Stephen M. Harris
Stephen M. Harris
Attorneys for Plaintiff Kieva Myers